Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/24/2017 09:08 AM CST

State of Nebraska, appellee, v.
Adrian Lester, appellant.
___ N.W.2d ___

Filed February 24, 2017.    No. S-15-742.

1. **Juries: Discrimination: Prosecuting Attorneys: Appeal and Error.**
   An appellate court reviews de novo the facial validity of an attorney's
   race-neutral explanation for using a peremptory challenge as a question
   of law. It reviews for clear error a trial court's factual determination
   regarding whether a prosecutor's race-neutral explanation is persuasive
   and whether the prosecutor's use of a peremptory challenge was pur-
   posefully discriminatory.
2. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules
   apply, the admissibility of evidence is controlled by the Nebraska
   Evidence Rules; judicial discretion is involved only when the rules make
   discretion a factor in determining admissibility.
3. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence
   Rules commit the evidentiary question at issue to the discretion of the
   trial court, an appellate court reviews the admissibility of evidence for
   an abuse of discretion.
4. **Motions for New Trial: Appeal and Error.** The standard of review for
   the denial of a motion for new trial is whether the trial court abused its
   discretion in denying the motion.
5. **Evidence: Appeal and Error.** In reviewing a sufficiency of the evi-
   dence claim, whether the evidence is direct, circumstantial, or a com-
   bination thereof, the standard is the same: An appellate court does not
   resolve conflicts in the evidence, pass on the credibility of witnesses,
   or reweigh the evidence; such matters are for the finder of fact. The
   relevant question for an appellate court is whether, after viewing the
   evidence in the light most favorable to the prosecution, any rational trier
   of fact could have found the essential elements of the crime beyond a
   reasonable doubt.

6. **Juries: Equal Protection: Discrimination: Prosecuting Attorneys.** Ordinarily, a prosecutor is entitled to exercise permitted peremptory challenges for any reason related to the prosecutor's view concerning the outcome of the case. But the Equal Protection Clause forbids the use of peremptory challenges on potential jurors solely because of their race.

7. **Juries.** When a timely objection under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), is made, a trial court must inquire into the reasons behind the peremptory strike.

8. **Juries: Prosecuting Attorneys.** Evaluating whether a prosecutor impermissibly struck a prospective juror based on race is a three-step process.

9. **Juries: Discrimination: Prosecuting Attorneys.** Under the first step of an inquiry under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), the defendant must make a prima facie showing that the prosecutor exercised a peremptory challenge because of race. A defendant satisfies the requirements of the first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.

10. ____: ____: ____. Under the second step of an inquiry under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. In determining whether the proffered explanation is race neutral, the court does not consider whether the prosecutor's reasons are persuasive, or even plausible. It is sufficient if the stated reasons, on their face, are not inherently discriminatory.

11. **Juries: Discrimination: Prosecuting Attorneys: Appeal and Error.** The question of whether the prosecutor's reasons for using a peremptory challenge are race neutral is a question of law that an appellate court reviews de novo.

12. **Juries: Discrimination: Prosecuting Attorneys: Proof.** The third step of the inquiry under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), requires the court to determine, in light of the parties' submissions, whether the defendant has met the burden of proving purposeful discrimination. This step involves evaluating the persuasiveness of the justification proffered by the prosecutor, but the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.

13. **Juries: Prosecuting Attorneys: Discrimination: Appeal and Error.** A trial court's ultimate determination of whether purposeful discrimination has been shown frequently involves its evaluation of the prosecutor's credibility and its observations of the juror's demeanor, and

because determinations of credibility and demeanor lie peculiarly within a trial judge's province, an appellate court affords deference to these findings absent exceptional circumstances.

14. **Appeal and Error.** Absent plain error, when an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as the trial court cannot commit error regarding an issue never presented and submitted to it for disposition.

15. **Appeal and Error: Words and Phrases.** Plain error is plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.

16. **Constitutional Law: Juries: Discrimination: Proof.** While the Constitution forbids striking even a single prospective juror for a discriminatory purpose, the inquiry under the third step of *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), does not require considering the wisdom or efficacy of a peremptory strike, but instead requires the court to determine, in light of the parties' submissions, whether the defendant has carried the burden of proving the strike was the result of purposeful discrimination.

17. **Criminal Law: Trial: Evidence: Appeal and Error.** An error in admitting or excluding evidence in a criminal trial, whether of constitutional magnitude or otherwise, is prejudicial unless the error was harmless beyond a reasonable doubt.

18. **Verdicts: Juries: Appeal and Error.** Harmless error review looks to the basis on which the trier of fact actually rested its verdict; the inquiry is not whether in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the actual guilty verdict rendered was surely unattributable to the error.

19. **Trial: Convictions: Evidence.** Where the evidence is cumulative and there is other competent evidence to support the conviction, the improper admission or exclusion of evidence is harmless beyond a reasonable doubt.

20. **Judges: Motions for New Trial: Evidence: Witnesses: Verdicts.** A trial judge is accorded significant discretion in granting or denying a motion for new trial, because the trial judge sees the witnesses, hears the testimony, and has a special perspective on the relationship between the evidence and the verdict.

21. **Motions for Mistrial: Appeal and Error.** Whether to grant a motion for mistrial is within the trial court's discretion, and an appellate court will not disturb its ruling unless the court abused its discretion.

22. **Criminal Law: Motions for Mistrial.** A mistrial is properly granted in a criminal case where an event occurs during the course of trial

which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.

23. **Constitutional Law: Criminal Law: Due Process: Presumptions: Proof.** Under the Due Process Clause of the 14th Amendment to the U.S. Constitution and under the Nebraska Constitution, in a criminal prosecution, the State must prove every element of an offense beyond a reasonable doubt and may not shift the burden of proof to the defendant by presuming that element upon proof of the other elements of the offense.

24. **Criminal Law: Trial: Witnesses: Evidence: Proof.** Because the burden of proof always remains with the State, it cannot comment on a defendant's failure to produce evidence to refute an element of the crime, because doing so could erroneously lead the jury to believe that the defendant carried the burden of introducing evidence. The exception to this rule is when the defendant voluntarily assumes some burden of proof by asserting the defenses of alibi, of self-defense, and of others, relying on facts that could be elicited only from a witness who is not equally available to the State.

25. **Trial: Evidence.** A defendant is entitled to inquire about weaknesses in the State's case, but this does not open the door for the State to point out that the defendant has not proved his or her innocence.

26. **Verdicts: Juries: Jury Instructions: Presumptions.** Absent evidence to the contrary, it is presumed that a jury followed the instructions given in arriving at its verdict.

27. **Motions for New Trial: Evidence.** Newly discovered evidence must actually be newly discovered, and it may not be evidence which could have been discovered and produced at trial with reasonable diligence.

28. **Criminal Law: Motions for New Trial: Evidence: Proof.** A criminal defendant who seeks a new trial on the basis of newly discovered evidence must show that if the evidence had been admitted at the former trial, it would probably have produced a substantially different result.

Appeal from the District Court for Douglas County: W. Mark Ashford, Judge. Affirmed.

Sean M. Conway, of Dornan, Lustgarten & Troia, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, and Kelch, JJ., and Pirtle, Judge.

Stacy, J.

Adrian Lester appeals his convictions for first degree murder, first degree assault, robbery, attempted robbery, and four counts of use of a deadly weapon to commit a felony. We affirm.

## I. BACKGROUND

On April 14, 2014, 15-year-old Allee H. sent a text message to her high school classmate Justice Terpstra (Terpstra), asking if he would sell her marijuana. Terpstra refused, after which the text messages between Allee and Terpstra became contentious, culminating in an agreement to meet at a park in Omaha, Nebraska, to fight. Both Allee and Terpstra recruited others to accompany them.

Allee's group was the first to arrive at the park. Accompanying Allee were Marcus Cooper, Joshua Schmitt, Lucio Martinez, and Tielor Williams. Everyone in Allee's group, except Martinez, smoked marijuana before going to the park to fight. Allee's group drove to the park in two vehicles. Schmitt drove one of the vehicles, in which Allee and Williams rode as passengers. Martinez drove the other vehicle with Cooper as a passenger.

When Terpstra arrived at the park, he was accompanied by his sister, Freedom Terpstra; his cousin, Victoria Terpstra; and his friends Dennis Brewer, Lester, and two other males. As soon as Terpstra's group arrived at the park, they got out of their vehicles and approached Schmitt's vehicle. Freedom was the first to reach Schmitt's vehicle, and she began hitting the car and screaming for Allee to get out. Allee stayed inside Schmitt's vehicle, as did Schmitt and Williams. At about the same time, a person from Allee's group, Cooper, walked over and stood near the passenger door of Schmitt's vehicle.

A male from Terpstra's group then approached the passenger side of Schmitt's vehicle, pointed a gun at Cooper, and

told Cooper to empty his pockets. Cooper handed the male a gold Zippo lighter and saw the male put the lighter into his pocket. Cooper testified the male who robbed him never fired his gun. Terpstra identified the male who robbed Cooper as Brewer.

Several witnesses testified they saw Lester approach the passenger side of Schmitt's vehicle and order the front seat passenger, Williams, to empty his pockets. Williams refused. Gunshots erupted, and Williams was shot four to five times in the face and neck. Schmitt was shot in the hand.

After the shooting, everyone in Terpstra's group ran to their vehicles and left. Some members of the group returned to Terpstra's house. Freedom testified that while they were gathered there, Lester said, "That motherfucker shouldn't have told me no" and then made a shooting sign with his hand. Victoria testified that when Lester was asked what happened, he responded, "I didn't like his tone so I shot him."

Before Lester left Terpstra's house, Lester asked Brewer to trade shirts with him. Brewer agreed, and took the orange shirt Lester had been wearing. Later that evening, when Freedom and Brewer were alone, Brewer gave Freedom a gold lighter. Both the orange shirt and gold lighter were later recovered by the police at Terpstra's house. On April 15, 2014, Terpstra and Freedom went to a motel to "hide from everybody" who knew about the shooting. They were later apprehended by U.S. marshals.

After the shooting, Allee's group drove to the hospital to seek medical attention for Williams and Schmitt. Schmitt's injuries required surgery but were not life threatening. Williams was pronounced dead. The cause of death was a gunshot wound to the head. Autopsy reports revealed Williams had been shot at very close range four times.

On the night of the shooting and into the next day, Omaha police detectives interviewed a number of people, including Cooper, Martinez, and Allee. Victoria later provided a written statement about what happened, and the primary suspects

became Brewer and Lester. On May 8, 2014, Lester was arrested and eventually charged with first degree murder, first degree assault, robbery, attempted robbery, and four counts of use of a deadly weapon to commit a felony.

Terpstra, Freedom, Victoria, Cooper, Schmitt, and Martinez all testified at trial. The witnesses provided conflicting accounts of who fired the shots that killed Williams and what the shooter was wearing.

Terpstra, Freedom, and Victoria each identified Lester as the person who shot Williams. Schmitt testified he was not able to see the shooter, because the shots were fired from outside the passenger side of his vehicle and Schmitt was in the driver's seat. Schmitt admitted that 3 days after the shooting, he was shown a photographic lineup and identified someone other than Lester as the shooter, but at trial he "back[ed] off" that identification and testified he never saw the shooter. Martinez testified that it was a man in a black hoodie pointing a gun at Cooper who shot Williams. Cooper testified that a man in a black hoodie was pointing a gun at him when shots were fired, but Cooper testified the man pointing the gun at him did not shoot. Cooper testified he did not see the shooter.

On multiple occasions while testifying, the witnesses contradicted prior statements they had made to the police or statements they had made in depositions. Lester's counsel argued that because of these contradictions, the witnesses were not credible. Defense counsel also questioned the thoroughness of the police investigation, noting that several pieces of evidence, including the orange shirt and gold lighter, were not tested for DNA.

The jury returned a verdict of guilty on all eight counts. After his motion for new trial was denied, Lester was sentenced to life imprisonment on the murder conviction, imprisonment of 15 to 15 years for two convictions involving use of a deadly weapon, and imprisonment of 20 to 20 years for assault in the first degree. The sentences were ordered to

be served consecutively. No sentences were imposed on the remaining convictions pursuant to *State v. McHenry*,[1] a case in which we held the underlying felony offense merges into a felony murder conviction and cannot be punished separately, barring a clear indication by the Legislature that independent punishments were intended.

Lester timely filed this direct appeal.

## II. ASSIGNMENTS OF ERROR

Lester assigns, restated and renumbered, that the district court erred by (1) overruling his *Batson* challenge to the State's peremptory strike of a prospective juror, (2) excluding testimony that was offered to impeach a witness, and (3) denying his motion for new trial. In addition, Lester asserts (4) the evidence presented at trial was insufficient to support his convictions.

## III. STANDARD OF REVIEW

[1] An appellate court reviews de novo the facial validity of an attorney's race-neutral explanation for using a peremptory challenge as a question of law. It reviews for clear error a trial court's factual determination regarding whether a prosecutor's race-neutral explanation is persuasive and whether the prosecutor's use of a peremptory challenge was purposefully discriminatory.[2]

[2] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.[3]

[3] Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court,

---

[1] *State v. McHenry*, 250 Neb. 614, 550 N.W.2d 364 (1996).

[2] *State v. Oliveira-Coutinho*, 291 Neb. 294, 865 N.W.2d 740 (2015).

[3] *State v. Henry*, 292 Neb. 834, 875 N.W.2d 374 (2016).

an appellate court reviews the admissibility of evidence for an abuse of discretion.[4]

[4] The standard of review for the denial of a motion for new trial is whether the trial court abused its discretion in denying the motion.[5]

[5] In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[6]

## IV. ANALYSIS

### 1. Batson Challenge

After the jurors were seated but before they had been sworn, Lester's counsel stated:

> At this time I would raise a Batson challenge based upon the fact that none of the primary jurors in this matter are African-American or black. There were two on the panel; they were both stricken by the State. I do recognize there is an alternate juror that is black but, for the reasons stated, I would raise a Batson challenge at this time.

Lester directed his challenge under *Batson v. Kentucky*[7] to prospective jurors S.M. and P.S., both of whom had been removed by the State using peremptory strikes. The court denied the challenge as to both. Lester does not assign error to

---

[4] *Id.*

[5] *State v. Oldson*, 293 Neb. 718, 884 N.W.2d 10 (2016).

[6] *State v. Newman*, 290 Neb. 572, 861 N.W.2d 123 (2015).

[7] *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

the court's ruling with respect to S.M., and we therefore focus our analysis on P.S.

[6,7] In *Batson*, the U.S. Supreme Court held that a prosecutor's privilege to strike individual jurors through peremptory challenges is subject to the commands of the Equal Protection Clause.[8] Ordinarily, a prosecutor is entitled to exercise permitted peremptory challenges for any reason related to the prosecutor's view concerning the outcome of the case.[9] But the Equal Protection Clause forbids the use of peremptory challenges on potential jurors solely because of their race.[10] When a timely objection under *Batson* is made, a trial court must inquire into the reasons behind the peremptory strike.[11]

[8,9] Evaluating whether a prosecutor impermissibly struck a prospective juror based on race is a three-step process.[12] First, the defendant must make a prima facie showing that the prosecutor exercised a peremptory challenge because of race.[13] A defendant satisfies the requirements of the first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.[14]

[10,11] Second, if the requisite showing has been made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question.[15] In determining whether the proffered explanation is race neutral, the court does not consider whether the prosecutor's reasons are persuasive, or even plausible.[16] It is sufficient if the stated reasons,

---

[8] See *State v. Oliveira-Coutinho, supra* note 2.

[9] See, *id.*; *State v. Nave*, 284 Neb. 477, 821 N.W.2d 723 (2012).

[10] See *id.*

[11] *State v. Long*, 264 Neb. 85, 645 N.W.2d 553 (2002).

[12] See *State v. Oliveira-Coutinho, supra* note 2.

[13] See *id.*

[14] See *State v. Floyd*, 272 Neb. 898, 725 N.W.2d 817 (2007), *disapproved on other grounds, State v. McCulloch*, 274 Neb. 636, 742 N.W.2d 727.

[15] See *State v. Oliveira-Coutinho, supra* note 2.

[16] *State v. Johnson*, 290 Neb. 862, 862 N.W.2d 757 (2015).

on their face, are not inherently discriminatory.[17] The question of whether the prosecutor's reasons are race neutral is a question of law that we review de novo.[18]

[12,13] The third step of the *Batson* inquiry requires the court to determine, "'in light of the parties' submissions,'"[19] whether the defendant has met the burden of proving purposeful discrimination.[20] This step involves evaluating the persuasiveness of the justification proffered by the prosecutor, but the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.[21] A trial court's ultimate determination of whether purposeful discrimination has been shown frequently involves its evaluation of the prosecutor's credibility and its observations of the juror's demeanor, and because determinations of credibility and demeanor lie "'"'peculiarly within a trial judge's province,'"'"[22] we afford deference to these findings absent exceptional circumstances.[23]

Here, the State asserted prospective juror P.S. "had some difficulty with speech and understanding" but suggested the "bigger concern" was his employment working with "computer software passcodes," which the State thought demonstrated "a heightened mindset that is looking very technically at this type of case." The State also noted that during voir dire, P.S. was the only prospective juror who mentioned that a witness' memory could be affected by drugs and alcohol. This concerned the

---

[17] *Id.*; *State v. Nave, supra* note 9.

[18] See *State v. Nave, supra* note 9.

[19] *Snyder v. Louisiana*, 552 U.S. 472, 477, 128 S. Ct. 1203, 170 L. Ed. 175 (2008).

[20] See *State v. Johnson, supra* note 16.

[21] See *State v. Thorpe*, 280 Neb. 11, 783 N.W.2d 749 (2010).

[22] *Snyder v. Louisiana, supra* note 19, 552 U.S. at 477.

[23] *State v. Johnson, supra* note 16.

State because several of its eyewitnesses had used marijuana immediately before the shooting.

After the State articulated its rationale for striking P.S., the court asked Lester's counsel, "Anything else?" Counsel answered, "No, Your Honor." The court then found that "the Batson challenges have been overcome by virtue of the statements of the prosecutor. There [are] race-neutral reasons for [the State's] decisions." The jury was sworn, and the trial commenced.

Lester argues the district court erred by accepting the State's race-neutral reason for exercising a peremptory strike to remove prospective juror P.S. After careful consideration of the principles announced in *Batson*, including the recent decision of the U.S. Supreme Court in *Foster v. Chatman*,[24] we find no clear error in the district court's ruling.

Here, Lester timely objected to the State's use of a peremptory strike to remove P.S., one of only two black prospective primary jurors. The district court implicitly concluded Lester had made a prima facie showing under *Batson* sufficient to permit the inference that discrimination had occurred, because it proceeded directly to the second step of the analysis and asked the State to explain its reasons for striking P.S.

As noted, the State gave three reasons for striking P.S. Upon our de novo review of the State's proffered explanations,[25] we conclude the reasons were not, on their face, inherently discriminatory. We thus proceed to the third step in the *Batson* analysis.

The district court made a factual finding that the *Batson* challenge had "been overcome by virtue of the statements of the prosecutor" and that there were "race-neutral reasons" for

---

[24] *Foster v. Chatman*, ___ U.S. ___, 136 S. Ct. 1737, 195 L. Ed. 2d 1 (2016).

[25] See *State v. Oliveira-Coutinho, supra* note 2.

the State's decisions. We review the court's factual finding in this regard for clear error.[26]

### (a) Difficulty With Speech and Understanding

Lester asserts there is nothing in the record to support the State's contention that prospective juror P.S. had difficulty with speech and understanding. The record does indicate that during voir dire, both the court and the State asked P.S. to repeat himself, but also shows that other prospective jurors, including some who served, were also asked to repeat responses or speak louder. Whether P.S. exhibited difficulty with speech or understanding during voir dire is difficult to discern from the written record, but our deferential standard of review recognizes that the district court had the benefit of observing the exchanges involving P.S. and was in the best position to judge whether the prosecutor's assessment of P.S.' speech and understanding was credible. And at the time the State offered this as an explanation for its strike of P.S., Lester did not challenge the accuracy of the State's characterization. Lester, as the appellant, has the responsibility to present a record that permits appellate review of the issue assigned as error[27] and bears the ultimate burden under *Batson* to show a discriminatory purpose.[28] On this record, we find no clear error in the district court's decision to accept the State's first reason for striking P.S.

### (b) Heightened Technical Mindset

P.S. worked as a software security coordinator for the University of Nebraska Medical Center. The State perceived this work as highly technical and was concerned that a heightened

---

[26] See *id.*

[27] See *State v. Lewis*, 240 Neb. 642, 483 N.W.2d 742 (1993) (Grant, J., concurring; Boslaugh, J., joins).

[28] See *State v. Thorpe, supra* note 21.

technical mindset would not be ideal for its case, particularly as the police had ordered fingerprint, DNA, and ballistic testing on some items of evidence, but not others.

On appeal, Lester argues the State's "'heightened mindset'" rationale was pretextual.[29] He argues that other, nonblack, jurors who were permitted to serve on the jury also had technical jobs. The U.S. Supreme Court explained recently in *Foster v. Chatman* that "'[i]f a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar non-black [panelist] who is permitted to serve, that is evidence tending to prove purposeful discrimination.'"[30]

[14,15] We note that Lester's argument about the occupations of other jurors was never articulated to the district court for its consideration and evaluation. Absent plain error, when an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as the trial court cannot commit error regarding an issue never presented and submitted to it for disposition.[31] Plain error is plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.[32] Assisted by the postargument supplemental briefing of the parties, we have carefully reviewed the record for plain error on this issue and find none.

Among the 12 jurors and two alternates were a camera company employee, a director of international service and new product development, a dog walker, a natural habitat manager, a credit union employee, a furniture rental employee, a retired postal worker, a family physician, an operation and communications coordinator for a natural gas company, an employee

---

[29] Supplemental brief for appellant at 7.

[30] *Foster v. Chatman, supra* note 24, 136 S. Ct. at 1754.

[31] *State v. Nadeem*, 284 Neb. 513, 822 N.W.2d 372 (2012); *State v. Tyma*, 264 Neb. 712, 651 N.W.2d 582 (2002).

[32] *State v. Nadeem, supra* note 31.

at a dance studio, a nursing student, and a physical therapist. Several impaneled jurors were unemployed. While each impaneled juror had some form of expertise and several had occupations which required advanced degrees and attention to detail, none had employment similar to P.S. On this record, we find no plain error in the district court's acceptance of this rationale as credible and race neutral.

### (c) Witness' Memory Affected by Drugs and Alcohol

During voir dire, P.S. was asked, "How do you judge the credibility of a witness [who is] on the stand?" P.S. replied, "I'm going to look at . . . listen to what they have to say, but at the same time memory could be affected by a lot of other things." When counsel asked, "Like what?" P.S. answered, "Alcohol, could be drugs, also could be vision. Those things have an impact on it."

P.S. was the only prospective juror to specify that when judging witness credibility, he would look at alcohol and drug use. The State argues it found this troubling, because several eyewitnesses had smoked marijuana just before the shooting and the credibility of those witnesses was a significant component of the State's case.

[16] On appeal, Lester points to nothing in the record suggesting the State's third rationale for striking P.S. was pretextual. Instead, he argues that a witness' alcohol and drug use is an entirely appropriate consideration when judging credibility. This argument, while correct, misses the point. While alcohol and drug use are indeed appropriate considerations when weighing witness credibility, prosecutors are free to exercise peremptory strikes for any reason related to their views concerning the outcome of the case,[33] including the possibility that a particular juror may be likely to weigh credibility in a way the prosecutor deems unfavorable, so long as

---

[33] See, *State v. Oliveira-Coutinho, supra* note 2; *State v. Nave, supra* note 9.

the peremptory strike is not used to remove a juror based on race.[34] While the Constitution forbids striking even a single prospective juror for a discriminatory purpose,[35] the inquiry under the third step of *Batson* does not require considering the wisdom or efficacy of a peremptory strike, but instead requires the court to determine, in light of the parties' submissions, whether the defendant has carried the burden of proving the strike was the result of purposeful discrimination.[36]

On this record, we find no clear error in the district court's acceptance of the State's race-neutral reasons for striking P.S. We reject Lester's first assignment of error.

## 2. Impeachment Evidence

Lester assigns that the district court erred in sustaining the State's objection to evidence he wanted to offer to impeach one of the State's witnesses. Some additional factual background is necessary to understand this assignment.

Terpstra was one of the witnesses who identified Lester as the shooter. During Terpstra's testimony, he acknowledged that shortly before the fight at the park, he sent Jasyln C. a Facebook message that said, "I wouldn't fight a bitch but I'd shoot a bitch." Terpstra admitted this message was a reference to Allee, and he admitted deleting this message after the shooting of Williams. Terpstra testified he sent this message to portray himself as a "bad-ass," but he denied having a gun with him the night of the fight. He further testified that he had never possessed a gun before the date of the shooting.

Lester called Jaslyn as a witness. Jaslyn testified she was not present during the fight at the park, but she had communicated with Terpstra via Facebook messenger both before and after the fight. She testified she was worried, based on those messages, that Terpstra would bring a gun to the park. She

---

[34] See *id.*

[35] *Foster v. Chatman, supra* note 24.

[36] See *State v. Johnson, supra* note 16.

tried to convince Terpstra not to do so, asking him several times "not to bring a gun up to [the] [p]ark" on the day of the shooting.

In addition to this testimony, Lester wanted to elicit testimony from Jaslyn that while at school 2 months before the shooting, she overheard Terpstra telling a classmate that he "had a gun." Lester claimed he wanted to offer this evidence both to impeach Terpstra's testimony that he had never possessed a gun and to give weight to Lester's theory that someone else fired the shots that killed Williams. The State objected to this testimony. The district court sustained the objection, ruling that Jaslyn's testimony was (1) hearsay, (2) improper impeachment, and (3) related to an event too remote in time to be admissible, as the alleged statement occurred 2 months before the shooting.

On appeal, Lester argues that Jaslyn's testimony was not hearsay and was admissible as a specific instance of prior conduct under Neb. Rev. Stat. § 27-608(2) (Reissue 2016) for the purpose of attacking Lester's credibility. The State argues that § 27-608 is the wrong framework and suggests that because Jaslyn's testimony refers to Terpstra's prior statement rather than his prior conduct, its admissibility is governed by Neb. Rev. Stat. § 27-613(2) (Reissue 2016), which excludes extrinsic evidence of prior inconsistent statements unless the witness is given an opportunity to "explain or deny" the statement.

[17-19] It is unnecessary to analyze the parties' evidentiary arguments, because the exclusion of Jaslyn's testimony, even if found to be erroneous, was undoubtedly harmless. An error in admitting or excluding evidence in a criminal trial, whether of constitutional magnitude or otherwise, is prejudicial unless the error was harmless beyond a reasonable doubt.[37] Harmless error review looks to the basis on which the jury actually rested its verdict; the inquiry is not whether in a trial that

---

[37] *State v. Cullen*, 292 Neb. 30, 870 N.W.2d 784 (2015).

occurred without the error, a guilty verdict would surely have been rendered, but whether the actual guilty verdict rendered was surely unattributable to the error.[38] Where the evidence is cumulative and there is other competent evidence to support the conviction, the improper admission or exclusion of evidence is harmless beyond a reasonable doubt.[39]

The record shows that Terpstra's testimony denying he possessed a gun was impeached by other evidence, such that Jaslyn's testimony about overhearing Terpstra claim to have a gun 2 months before the shooting would have been merely cumulative. Terpstra admitted that Jaslyn asked him not to bring a gun to the fight at the park and admitted that he sent Jaslyn a Facebook message stating, "I wouldn't fight a bitch but I'd shoot a bitch." He admitted this message referred to Allee, and he admitted to deleting this message after the shooting of Williams. Jaslyn testified she was worried Terpstra would bring a gun to the fight at the park, and she tried to convince him not to. She also testified that before the fight, she told Allee of her concern that Terpstra would bring a gun to the fight. All of this evidence was heard by the jury and tended to undermine the credibility of Terpstra's testimony that he did not possess a gun before the fight. We conclude that Jaslyn's omitted testimony—that she overheard Terpstra say he had a gun 2 months before the shooting—was merely cumulative of this other evidence. As such, the exclusion of that testimony, if error at all, was harmless. We reject Lester's second assignment of error.

### 3. MOTION FOR NEW TRIAL

[20] After the jury returned its verdict, Lester filed a motion for new trial, which the district court denied. Lester now contends the motion should have been granted based on two

---

[38] *Id.*

[39] *State v. Robinson*, 271 Neb. 698, 715 N.W.2d 531 (2006); *State v. Kinser*, 259 Neb. 251, 609 N.W.2d 322 (2000).

grounds: prosecutorial misconduct and newly discovered evidence. In addressing his argument, we are mindful that a trial judge is accorded significant discretion in granting or denying a motion for new trial, because the trial judge sees the witnesses, hears the testimony, and has a special perspective on the relationship between the evidence and the verdict.[40]

### (a) Prosecutorial Misconduct and Improper Burden Shifting

During cross-examination, Lester asked a detective whether DNA was collected on certain items of evidence acquired during the investigation and the detective admitted it was not. The questions generally attempted to discredit the police investigation. On redirect examination, the State asked the detective to explain who decides to test certain items for DNA and why some items are not tested. In this context, the State asked the detective whether "[d]efense attorneys have the right to make the request to have [an item of evidence] tested?" The detective answered that defense attorneys can request testing, and the redirect proceeded without objection.

During closing arguments, the State discussed how challenging it can be to get usable fingerprints from various items of evidence. The prosecutor referenced the testimony of the detective, stating:

And why didn't we do DNA [analysis on certain items of evidence]? Why didn't we do fingerprints? . . .

. . . It isn't the police that has the DNA lab. It's a separate entity at the University of Nebraska Medical Center. [The defense] ha[s] just as much right to get that property and have it tested as everybody else in this case.

Lester did not object when this statement was made. But at the conclusion of the State's closing argument, Lester moved for a mistrial. He argued this statement was prosecutorial misconduct, because it implied Lester had a duty to order

---

[40] *State v. Oldson, supra* note 5.

testing and thus improperly shifted the burden of proof to the defense. The trial court denied the motion, noting Lester failed to object during the detective's testimony at trial and finding the statement did not suggest Lester had the burden of proof to elicit exculpatory evidence.

[21,22] Even if the prosecutor's statement during closing constituted prosecutorial misconduct, an issue we need not decide, we conclude the trial court did not err in refusing to grant a mistrial. Whether to grant a motion for mistrial is within the trial court's discretion, and this court will not disturb its ruling unless the court abused its discretion.[41] A mistrial is properly granted in a criminal case where an event occurs during the course of trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.[42]

[23,24] Under the Due Process Clause of the 14th Amendment to the U.S. Constitution and under the Nebraska Constitution, in a criminal prosecution, the State must prove every element of an offense beyond a reasonable doubt and may not shift the burden of proof to the defendant by presuming that element upon proof of the other elements of the offense.[43] Because the burden of proof always remains with the State, it cannot comment on a defendant's failure to produce evidence to refute an element of the crime, because doing so could erroneously lead the jury to believe that the defendant carried the burden of introducing evidence.[44] The exception to this rule is when the defendant voluntarily assumes some burden of proof by asserting the defenses of alibi, of self-defense, and of others, relying on facts that could

---

[41] *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013).

[42] *Id.*

[43] *Patterson v. New York*, 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977); *State v. Hinrichsen*, 292 Neb. 611, 877 N.W.2d 211 (2016).

[44] See *State v. Rocha, ante* p. 716, ___ N.W.2d ___ (2017).

be elicited only from a witness who is not equally available to the State.[45]

We recently decided *State v. Rocha*,[46] a case in which the State sought to elicit testimony that the defendant had not requested DNA testing on certain evidence. Rocha was arrested during a police stop after the police found a marijuana-like residue in his pocket and a methamphetamine-like substance and drug paraphernalia in his vehicle. At trial, the arresting police officer conceded he did not request any fingerprint or DNA testing of the items found in the vehicle. During redirect, the State noted the defendant had not independently tested the evidence to show his fingerprints and DNA were not present. The defendant immediately objected that the State was improperly shifting the burden of proof to him and moved for a mistrial. The motion for mistrial was denied, but the court included the following jury instruction with regard to the burden of proof:

> "There was testimony at trial that [the defendant] never requested any scientific testing of evidence. You must disregard that testimony in its entirety. [The defendant] has pleaded not guilty and is presumed to be innocent. The State's burden to prove each element of a crime charged never shifts to a defendant."[47]

[25] On appeal, we rejected the State's argument that the defendant "opened the door" to its questions about Rocha's failure to conduct his own DNA and fingerprint testing. We explained that while a defendant may invite the State to explain why it chose not to submit certain items for testing, a defendant in a criminal case can never "open the door" to shift the burden of proof.[48] In other words, a defendant is entitled to inquire about weaknesses in the State's case, but this does

---

[45] *Id.*

[46] *Id.*

[47] *Id.* at 727, ___ N.W.2d at ___.

[48] *State v. Rocha, supra* note 44.

not open the door for the State to point out that the defendant has not proved his or her innocence.[49]

[26] We held in *Rocha* that the district court did not abuse its discretion in denying the motion for mistrial. We reasoned the court instructed the jury to disregard the testimony in its entirety and made clear to the jury that the defendant "'has pleaded not guilty and is presumed to be innocent'" and that "'[t]he State's burden to prove each element of a crime charged never shifts to a defendant.'"[50] Absent evidence to the contrary, it is presumed that a jury followed the instructions given in arriving at its verdict.[51] Thus, under our abuse of discretion standard of review, we concluded that the questioning and testimony, in light of the jury instructions, did not deprive the defendant of a fair trial.[52]

There are factual and procedural differences between the present case and *Rocha*. In this case, Lester did not object to the detective's testimony during trial nor did he object during the State's closing argument when reference was made to Lester's ability to independently test the evidence. Instead, as we discuss later, Lester's counsel addressed the State's remarks in his own closing argument, then moved for a mistrial after closing arguments were concluded. Lester did not request a curative instruction, and the court did not give one.

However, here, as in *Rocha*, the jury was properly instructed: "The burden of proof is always on the State to prove beyond a reasonable doubt all of the material elements of the crime charged and this burden never shifts." The jury was also instructed: "Statements, arguments, and questions of the lawyers for the State and [Lester]" are not evidence. The jury was repeatedly reminded of these standards during trial by the

---

[49] *Id.*

[50] *Id.* at 758-59, ___ N.W.2d at ___.

[51] *State v. McSwine*, 292 Neb. 565, 873 N.W.2d 405 (2016).

[52] *State v. Rocha, supra* note 44.

State, the defense, and the court. Furthermore, during his closing argument, Lester's counsel stated:

> It is not [Lester's] job to test evidence that is booked into state property or to do something with a piece of evidence that's regularly being used by law enforcement and sent over to a DNA laboratory. . . . Do not think that in any way it is our burden to do that. It is the State's.

In this case, the jury was instructed multiple times by the court, and reminded by counsel, that the State had the burden to prove every element of the crime charged. Absent evidence to the contrary, it is presumed that a jury followed the instructions given in arriving at its verdict.[53] Under our abuse of discretion standard of review, we conclude on this record that the State's brief comment during closing argument did not deprive Lester of a fair trial.

### (b) Newly Discovered Evidence

Lester claims that 2 days after the jury returned its verdict in this case, Brewer posted a comment on Facebook. The post, without edits, reads as follows: "If they identified me as the shooter then why tf ain't ma brother sittin here next to me? The system corrupt, send ma fucn brother home man . . . #ReadyDaTruth."

Lester contends that in this posting, "Brewer is acknowledging his potential involvement as the shooter . . . and exculpating [Lester]." Lester characterizes the Facebook post as newly discovered evidence.

The district court found Brewer's Facebook post was "ambiguous at best" and did not constitute newly discovered evidence for purposes of a new trial. We agree.

[27,28] Newly discovered evidence must actually be newly discovered, and it may not be evidence which could have been discovered and produced at trial with reasonable diligence.[54]

---

[53] *State v. McSwine, supra* note 51.

[54] *State v. Atwater*, 245 Neb. 746, 515 N.W.2d 431 (1994), *disapproved on other grounds, State v. Lykens*, 271 Neb. 240, 710 N.W.2d 844 (2006).

A criminal defendant who seeks a new trial on the basis of newly discovered evidence must show that if the evidence had been admitted at the former trial, it would probably have produced a substantially different result.[55]

The Facebook post was not newly discovered evidence for at least two reasons. First, it was not evidence that could not have been discovered and produced at trial. Rather, it was a public comment made in response to the jury's verdict. Brewer's post merely expresses a belief that at some point during the investigation, somebody identified Brewer as the shooter. Second, the comment is ambiguous at best as to Lester's guilt or innocence and does not amount to exculpatory evidence. The post does not contain any admission or suggestion of Brewer's guilt, but merely expresses dissatisfaction with the jury's verdict of guilt.

We find no abuse of discretion in denying the motion for new trial. Lester's third assignment of error lacks merit.

### 4. Sufficiency of Evidence

Finally, Lester claims the evidence at trial was insufficient to support his convictions. Lester does not point to a specific element of an offense that was lacking in evidentiary support; rather, he argues there was insufficient evidence to convict him, because the State's witnesses contradicted one another and were biased. Further, Lester claims the State's investigation was inadequate. Lester made these same arguments to the jury.

In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.[56] The relevant question for an appellate court

---

[55] *State v. Buckman*, 267 Neb. 505, 675 N.W.2d 372 (2004).

[56] *State v. Newman, supra* note 6; *State v. Hale*, 290 Neb. 70, 858 N.W.2d 543 (2015).

is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[57]

After carefully reviewing the record, we find there was sufficient evidence to support Lester's convictions. We acknowledge that there were some inconsistencies in witness testimony; however, an appellate court does not resolve conflicts in the evidence or pass on the credibility of witnesses. Viewed in the light most favorable to the State, the record contains sufficient evidence, if believed, to support every element of the crimes charged. Lester's fourth assignment is meritless.

## V. CONCLUSION

For the foregoing reasons, we affirm Lester's convictions and sentences.

AFFIRMED.

CONNOLLY, J., not participating.

---

[57] *Id.*