IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. WARE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

SCOTT L. WARE, APPELLANT.

Filed October 24, 2017.    No. A-16-1168.

Appeal from the District Court for Douglas County: SHELLY R. STRATMAN, Judge.
Affirmed in part, and in part vacated and remanded for resentencing.

Joseph Kuehl, of Lefler & Kuehl Law, for appellant.

Douglas J. Peterson, Attorney General, and Joe Meyer for appellee.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Scott L. Ware was convicted of terroristic threats, a Class IIIA felony, and use of a deadly weapon to commit a felony, a Class IC felony, after a jury trial in the Douglas County District Court. Ware now appeals his convictions and sentences. Although we affirm Ware's convictions and his sentence for use of a deadly weapon to commit a felony, we vacate Ware's sentence for terroristic threats and remand the cause to the district court for resentencing in accordance with this opinion.

## II. BACKGROUND

Ware's convictions were the result of an incident that took place on November 18, 2015. The victim, Misty Parker, made a report to police that Ware pulled a gun on her and threatened her as she was walking to pick up her daughter from school. Ware was initially charged by

- 1 -

information with terroristic threats under Neb. Rev. Stat. § 28-311.01 (Reissue 2016). Before trial, an amended information added a charge of use of a deadly weapon (firearm) to commit a felony under Neb. Rev. Stat. § 28-1205 (Reissue 2016). A jury trial was held in September 2016.

Parker testified that between 3:30 and 4 p.m. on November 18, 2015, she was walking to pick up her daughter from elementary school. She was stopped at a crosswalk when she heard someone call her name. She looked up and saw Ware alone in a minivan. Parker recognized Ware's face immediately, having known him for years as a friend of her fiancé's, and because she and Ware had a previous sexual encounter (after which she and Ware's relationship soured, and there was "no speaking, no nothing," which was still the case as of November 18).

According to Parker, she looked up and saw Ware, and he yelled at her to "check West and something about a girl named Puffy," which she interpreted to imply infidelity on the part of her fiancé (West) with a woman named Puffy. In response, Parker yelled profanities at Ware and "flipped him the finger."

After the initial interaction, Parker said she continued walking up the street on the way to the school. Ware turned the van around and was driving next to Parker as she walked. She could hear him yelling something undecipherable, and she continued to "flip him off" and walk away. When they reached the corner of the block, Parker turned and proceeded down the sidewalk directly toward the school. Ware turned through the intersection and then drove his van across the lanes and up onto the curb in front of Parker. His left hand was on the steering wheel and his right hand was temporarily hidden from Parker's sight. Ware then pulled out a pistol and aimed it out of the driver's side window at Parker's head. The gun was between one and two feet from her head when Ware looked at her and said, "I have one for you and I have one for West. Watch."

Parker was terrified and ran to the elementary school, where she vomited in the bathroom. After regaining her composure, she alerted the principal as to what had happened, and the police were called. Officers arrived a few minutes later to interview Parker and she described the events, identified Ware, and gave them a description of the vehicle, the pistol, and Ware's clothing. Parker described the pistol as being small with a black handle and some silver. She said Ware was wearing a dark shirt, a black leather coat, and a brown golf hat.

Officer Matt McDonald testified he and his partner initially proceeded to Ware's apartment, where Officer Andrew Ramsay and his partner had already arrived in response to Parker's call to the police. Seeing Officer Ramsay and his partner were already at Ware's apartment, Officer McDonald and his partner went to the school to interview Parker.

Officer Ramsay testified he and his partner were the first to arrive at Ware's apartment. After the other officers went to the school to interview Parker, Officer Ramsay and his partner knocked on Ware's door. Ware answered, and after the officers explained they were there in response to Parker's call, Ware gave written consent to a search of his apartment.

After interviewing Parker, Officer McDonald and his partner returned to Ware's apartment, where Officer Ramsay and his partner were still conducting a search. Ware was wearing clothing consistent with the description Parker had provided earlier in her interview at the school. Officer McDonald and his partner took Ware into custody for questioning at police headquarters downtown. Ware allowed Officer Ramsay and his partner to stay and continue searching his apartment. After receiving a phone call from the Criminal Investigation Bureau instructing them

to search for a black jacket, Officer Ramsay and his partner searched Ware's bedroom and found a black leather jacket with a .32 caliber revolver in the pocket.

Upon discovering the weapon, Officer Ramsay called the Crime Lab to photograph and collect the evidence. Krystal Kirwin, a Crime Lab technician, went to Ware's home and took photographs of the evidence seized. She testified at trial as to the authenticity of the photographs of Ware's apartment and chain of custody of the physical evidence, including the .32 caliber revolver and ammunition admitted into evidence at trial.

After the State rested, the defense made a motion for a directed verdict, which was denied. The defense then proceeded to call its only witness, Nancy Carson. Carson testified that on the date of the incident, she spent most of the afternoon with Ware, with whom she has had an on-and-off romantic relationship for years. She acknowledged Ware was driving a van that day, but claimed he was wearing a pink and white long sleeved shirt with a burgundy vest over it and a tan jacket. Exhibit 28, a photograph of the tan jacket, was received into evidence without objection. The police found the jacket in a laundry basket in Ware's living room during their search.

After the close of all evidence, the defense renewed its motion for a directed verdict, which the district court denied. The jury convicted Ware of both charges. The district court sentenced Ware to 5 to 7 years' imprisonment for his use of a deadly weapon to commit a felony, and 2 years' imprisonment for terroristic threats. Ware now appeals.

## III. ASSIGNMENTS OF ERROR

Ware assigns that (1) the trial court erred in overruling his motion for a directed verdict and motion to dismiss for insufficient evidence; (2) the trial court erred by imposing excessive sentences; and (3) his trial counsel was ineffective for failing to properly investigate the scene of the incident or interview witnesses, and for failing to adequately demonstrate the exculpatory nature of Exhibit 28.

## IV. STANDARD OF REVIEW

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Jedlicka*, 297 Neb. 276, 900 N.W.2d 454 (2017).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Carpenter*, 293 Neb. 860, 880 N.W.2d 630 (2016). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Hunnel*, 290 Neb. 1039, 863 N.W.2d 442 (2015).

Plain error may be found on appeal when an error, plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the

integrity, reputation, and fairness of the judicial process. *State v. Kantaras*, 294 Neb. 960, 885 N.W.2d 558 (2016).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Mendez-Osorio*, 297 Neb. 520, 900 N.W.2d 776 (2017). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

## V. ANALYSIS

### 1. MOTION FOR DIRECTED VERDICT

Ware contends the trial court erred by "overruling [his] motion for a directed verdict and motion to dismiss for insufficient evidence." Brief for appellant at 10. Ware moved the court for a directed verdict at the close of the State's case, put on evidence after the first motion was denied, and then renewed his motion for a directed verdict after the close of the case. By putting on evidence after the first motion was denied, Ware waved his right to challenge the denial of that first motion. *State v. Olbricht*, 294 Neb. 974, 885 N.W.2d 699 (2016). However,

> [w]hen a defendant makes a motion at the close of the State's case in chief and again at the conclusion of all the evidence, it is proper to assign as error that the defendant's motion for directed verdict made at the conclusion of all the evidence should have been sustained.

*State v. Duncan*, 293 Neb. 359, 368-69, 878 N.W.2d 363, 372-73 (2016). Therefore, Ware properly preserved the right to challenge the denial of his renewed motion for a directed verdict.

In a criminal case, a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. *State v. Duncan, supra*. If there is any evidence which will sustain a finding for the party against whom a motion for directed verdict is made, the case may not be decided as a matter of law, and a verdict may not be directed. *Id.*

Ware's assignment of error also challenges the sufficiency of the evidence. When challenging the sufficiency of the evidence supporting a conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Lester*, 295 Neb. 878, 898 N.W.2d 299 (2017). Because finding each essential element of a crime could have been established beyond a reasonable doubt must necessarily mean the State did not completely fail to put on evidence for each of those essential elements (the standard for a directed verdict discussed above), we address the sufficiency of the evidence standard first.

Ware was convicted under § 28-311.01 and § 28-1205. Section 28-311.01(1)(a) states: "A person commits terroristic threats if he or she threatens to commit any crime of violence . . . with the intent to terrorize another." Terroristic threats is a Class IIIA felony. § 28-311.01(2). Section § 28-1205(1)(a) states: "Any person who uses a firearm . . . to commit any felony which may be

prosecuted in a court of this state commits the offense of use of a deadly weapon to commit a felony."

Ware argues there was insufficient evidence to support his convictions because the State did not produce additional witnesses or "any other scientific evidence that may have existed" and because he perceives inconsistencies in Parker's testimony. Brief for appellant at 10. However, his arguments attack the persuasiveness of the evidence put on by the State, rather than identifying any essential element of the crimes committed that lacks evidentiary support.

We find the evidence at trial was sufficient for a rational trier of fact to conclude each of the essential elements of Ware's crimes were proven beyond a reasonable doubt. Parker testified Ware pointed a pistol at her and said "I have one for you and I have one for West. Watch." She interpreted Ware's comment to mean he was going to shoot her. Ware's actions scared Parker enough to cause her to run away from the scene to the safety of the school, where she vomited in the bathroom because she was so distressed by Ware's threat. The officer who interviewed her testified she was visibly shaking, flustered, and cried a few times during the interview. Officers found a van outside of Ware's house, and a pistol in the pocket of a coat in his house. All three items matched the descriptions Parker gave the officers at the school.

Based on the evidence outlined above, a rational fact finder could find beyond a reasonable doubt that Ware used a pistol to intentionally terrorize Parker by threatening her, thereby meeting each of the elements in §§ 28-311.01 and 28-1205. Accordingly, there was sufficient evidence to support both of the convictions, and Ware's renewed motion for a directed verdict was necessarily properly denied.

2. SENTENCES

Having found sufficient evidence to support Ware's convictions, we now consider his argument that his sentences were excessive. We note Ware's offenses occurred after August 30, 2015, the effective date of 2015 Neb. Laws, L.B. 605, which changed the classification of certain crimes and made certain amendments to Nebraska's sentencing laws.

(a) Plain Error of Terroristic Threats Sentence

The State asserts the district court committed plain error in its sentence for the terroristic threats charge because it imposed a determinate, rather than an indeterminate sentence as required by law. We agree. A sentence that is contrary to the court's statutory authority is an appropriate matter for plain error review. *State v. Kantaras, supra.*

The district court sentenced Ware to a period of 2 years' imprisonment for terroristic threats, a Class IIIA felony. A Class IIIA felony is punishable by up to 3 years' imprisonment and 18 months' post-release supervision, a $10,000 fine, or both; there is no minimum sentence for imprisonment, but 9 months' post-release supervision is required if imprisonment is imposed. See Neb. Rev. Stat. § 28-105 (Reissue 2016). Additionally, Neb. Rev. Stat. § 29-2204.02(4) (Reissue 2016) states:

> For any sentence of imprisonment for a Class III, IIIA, or IV felony for an offense committed on or after August 30, 2015, imposed consecutively or concurrently with . . .
> (b) a sentence of imprisonment for a Class I, IA, IB, IC, ID, II, or IIA felony, the court

shall impose an indeterminate sentence within the applicable range in section 28-105 that does not include a period of post-release supervision . . .

As discussed above, Ware was convicted of a Class IIIA felony for terroristic threats, and a Class IC felony for use of a weapon to commit a felony, with the sentences to run consecutively. The combination of those sentences falls under § 29-2204.02(4)(b), requiring an indeterminate sentence for the terrorist threats felony conviction. Accordingly we vacate Ware's sentence for terroristic threats and remand the cause to the district court for resentencing consistent with § 29-2204.02(4). See *State v. Chacon*, 293 Neb. 203, 894 N.W.2d 238 (2016) (vacating defendant's sentence and remanding cause for resentencing consistent with § 29-2204.02(4)).

### (b) Excessive Sentence

Because of the plain error in the terroristic threats sentence, we need only address Ware's excessive sentence claim related to his conviction for use of a deadly weapon to commit a felony. The district court sentenced Ware to 5 to 7 years' imprisonment for this conviction under § 28-1205 (a Class IC felony), less a credit for 91 days served. A Class IC felony is punishable by a mandatory minimum 5 years' imprisonment, and a maximum of 50 years' imprisonment. § 28-105. A person convicted of a felony for which a mandatory minimum sentence is prescribed shall not be eligible for probation. *Id*. The district court's sentence was not only within the statutory limits, but was at the very bottom of the permissible sentencing range.

Notably, in his brief, Ware admits "the trial court gave [him] a sentence that was on the low end of the spectrum for [his] two convictions." Brief for appellant at 8. However, he then claims "the trial court abused its discretion when it added the four years" to the mandatory minimum five year sentence. *Id*. Presumably "four years" is a reference to the two years for the terroristic threats conviction, and the additional two year range for the use of a deadly weapon to commit a felony conviction. He supports his argument solely by pointing out that the "trial court acknowledged that, given [his] previous life circumstances . . . , [Ware] had done really well for himself by staying out of trouble for the most part," and Ware then concludes the 5 years' imprisonment "was more than sufficient." *Id.*

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Russell*, 292 Neb. 501, 874 N.W.2d 9 (2016).

Ware's excessive sentence argument largely rests on the additional years he received as a result of the consecutive sentence for terroristic threats, which we have vacated and remanded for resentencing. He claims the 5-year mandatory minimum sentence for Ware's use of a deadly weapon to commit a felony conviction was "more than sufficient." The court was not permitted to order probation, and ordered the very minimum sentence required by law. Although the court gave a range of 5 to 7 years' imprisonment, this cannot be said to constitute an abuse of discretion. We affirm Ware's sentence for his conviction for use of a deadly weapon to commit a felony.

### 3. INEFFECTIVE ASSISTANCE OF COUNSEL

Ware claims his trial counsel was ineffective for failing to properly investigate the scene of the incident, failing to interview witnesses, and failing to adequately demonstrate the

exculpatory nature of exhibit 28 (photograph). The record is sufficient to review these claims and we conclude trial counsel's performance was not deficient, nor was there prejudice to Ware's defense.

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Mendez-Osorio*, 297 Neb. 520, 900 N.W.2d 776 (2017). Otherwise, the issue will be procedurally barred. *Id.* The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id.* The determining factor is whether the record is sufficient to adequately review the question. *Id.*

Allegations of how the defendant was prejudiced by trial counsel's allegedly deficient conduct are unnecessary to the specific determination of whether a claim of ineffective assistance of counsel can be determined based on the record on direct appeal. *Id*. In the case of an argument presented for the purpose of avoiding procedural bar to a future postconviction proceeding, appellate counsel must present a claim with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Newman*, 290 Neb. 572, 861 N.W.2d 123 (2015). To show deficient performance, a defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *State v. Vanderpool*, 286 Neb. 111, 835 N.W.2d 52 (2013). To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Newman, supra*. An appellate court may address the two prongs of this test, deficient performance and prejudice, in either order. *Id.*

Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error, which effect was a fundamentally unfair trial. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015). An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014).

An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014).

(a) Investigating Scene of Incident and Interviewing Witnesses

Ware claims his trial counsel was deficient by failing to investigate the scene of the incident; he claims Parker testified the incident happened just before school was dismissed and

that there were "probably hundreds of parents and kids within sight of where the incident took place." Brief for appellant at 9. Ware contends, "It is hard to imagine that not one person witnessed a van pull onto the curb and point a gun on [sic] the window at [Parker]," and "it is equally hard to imagine that no surveillance existed at [the] school." *Id*. He then asserts, "To not secure one witness or to have any other evidence from the scene illustrates that trial counsel for [Ware] failed to properly investigate the scene of the incident." *Id*. Ware does not specify how an investigation of the scene of the incident--the sidewalk where the second altercation occurred--would have produced any specific piece of evidence. For his counsel to have been deficient in failing to go to the scene of the incident, Ware at least needs to allege with some particularity what he would expect could have been discovered that would have been favorable to his defense. Although Ware alludes to the possibility of surveillance at the school, he fails to state how such surveillance would have benefitted his defense.

Ware also claims, "For all the same reasons listed in the above argument, trial counsel was deficient for failing to find or look for one independent witness that could have supported [Ware's] version of events[,]" and this deficiency prejudiced Ware. *Id*. He does not specify what "independent witness" counsel should have interviewed, nor does he assert what that witness testimony would reveal.

In a direct appeal, we do not need specific factual allegations as to who should have been called or what that person or persons would have said to be able to conclude that any evidence of such alleged ineffective assistance will not be found in the trial record. *State v. Abdullah, supra*. Nevertheless, we are concerned with the lack of any specificity as to who those uncalled witnesses were from the standpoint of a potential postconviction court's ability to identify if a particular failure to call a witness claim is the same one that was raised on direct appeal. *Id*. However, mere speculation as to pieces of evidence that can be imagined to possibly exist, and/or the conclusion that trial counsel should have found some unspecified piece of evidence that might have somehow exonerated Ware is not sufficiently particular to show deficient performance or prejudice. See *State v. Threet*, 231 Neb. 809, 813, 438 N.W.2d 746, 749 (1989), *disapproved on other grounds*, *State v. Harris*, 267 Neb. 771, 677 N.W.2d 147 (2004) (claim of ineffective assistance based upon defense counsel not procuring witnesses and evidence favorable to defendant failed to specify what witnesses could have been procured or what evidence adduced; counsel not ineffective for determining "if anywhere in this wide world there is some evidence favorable to defendant's position"); *State v. Abdullah, supra* (defendant's failure to make sufficiently specific allegations of deficient conduct relating to counsel's alleged failure to call witnesses is too vague for determination).

When the claim is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Casares, supra*. General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal and thereby preserve the issue for later review. *Id*. Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit; an ineffective assistance of counsel claim made on direct appeal can be found to be without merit if

the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. See *id.*

We conclude Ware failed to make sufficiently specific allegations of deficient conduct relating to the alleged failure to investigate the scene or to find an independent witness to support Ware's version of the events. The record establishes that trial counsel's performance was not deficient, nor was there prejudice to Ware's defense.

### (b) Demonstrating Exculpatory Nature of Exhibit 28

Ware also argues his trial counsel was ineffective for not "mentioning" exhibit 28 (photograph) during closing statements and moving past it too quickly after entering it into evidence during witness examination. When reviewing claims of ineffective assistance, an appellate court will not second-guess a trial counsel's reasonable strategic decisions. *State v. Loding*, 296 Neb. 670, 895 N.W.2d 669 (2017).

The record before us does not support a claim of ineffective assistance of counsel regarding exhibit 28. Exhibit 28 was offered into evidence by Ware's counsel during the direct examination of Carson. Carson laid the foundation for the exhibit by testifying it was a photograph accurately depicting Ware's living room, and that in the bottom right corner there was a white laundry basket with a tan jacket in it matching the one she testified Ware was wearing the entire time she was with him on November 18, 2015. Ware's trial counsel published the exhibit to the jury and then proceeded through an extensive line of questioning in the examination of Carson to see if there was any point in time when Ware was not wearing the tan jacket until he left Carson that afternoon.

The purpose of this examination and exhibit 28 was to corroborate Carson's description of Ware's clothing and the defense's alternate explanation of events on the day in question, thereby also challenging Parker's description of Ware's appearance and the events that day. During Ware's closing arguments, trial counsel referenced the disparity between Carson's and Parker's testimony regarding which jacket Ware had on that afternoon without specifically referencing exhibit 28. The members of the jury were present for the examination of Carson, the publication of exhibit 28 in the courtroom, and Ware's closing arguments, which combined gave them a chance to adequately assess the exculpatory nature of exhibit 28. The jury had the opportunity to weigh this information against the State's evidence of Parker's testimony and a .32 caliber pistol being found in the pocket of a black jacket matching Parker's description on Ware's bed, and the jury nevertheless unanimously convicted Ware.

We find the record establishes there was no deficiency in the direct examination of Carson regarding exhibit 28, or failing to specifically refer to the exhibit during closing argument. We conclude Ware did not receive ineffective assistance of counsel regarding the exculpatory nature of exhibit 28.

## VI. CONCLUSION

For the reasons set forth above, we affirm both of Ware's convictions and his sentence for use of a deadly weapon to commit a felony under § 28-1205. However, we vacate Ware's sentence

and remand the cause to the district court for a new, indeterminate sentence for Ware's terroristic threats conviction under § 28-311.01 in accordance with § 29-2204.02(4).

AFFIRMED IN PART, AND IN PART VACATED
AND REMANDED FOR RESENTENCING.