Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/09/2017 09:14 AM CST

State of Nebraska, appellee, v.
Abel Mendez-Osorio
___ N.W.2d ___

Filed August 18, 2017.    No. S-16-550.

1. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law.

2. **____: ____.** In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

3. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

4. **Appeal and Error.** Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.

5. **Effectiveness of Counsel: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record.

6. **Effectiveness of Counsel: Records: Appeal and Error.** The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question.

7. **Postconviction: Effectiveness of Counsel: Records: Appeal and Error.** In the case of an argument presented for the purpose of avoiding procedural bar to a future postconviction proceeding, appellate counsel must present a claim with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court.

8. **Effectiveness of Counsel: Proof: Appeal and Error.** To prevail on a claim based on counsel's ineffective assistance, the defendant must show, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), that counsel's performance was deficient. In other words, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. A court may address deficient performance and prejudice in either order.

9. **Rules of Evidence: Hearsay.** Excited utterances are an exception to the hearsay rule, because the spontaneity of excited utterances reduces the risk of inaccuracies inasmuch as the statements are not the result of a declarant's conscious effort to make them.

10. **Criminal Law: Statutes: Minors: Words and Phrases.** Under Neb. Rev. Stat. § 28-707(1)(a) (Reissue 2016), "endangers" means to expose a minor child's life or health to danger or the peril of probable harm or loss. Where a child is endangered, it may be injured; it is the likelihood of injury against which § 28-707(1)(a) speaks.

11. **Criminal Law: Statutes.** Courts strictly construe criminal statutes.

12. **Criminal Law: Minors.** Criminal endangerment in Neb. Rev. Stat. § 28-707(1)(a) (Reissue 2016) encompasses not only conduct directed at the child but also conduct which presents the likelihood of injury due to the child's having been placed in a situation caused by the defendant's conduct.

13. **Sentences: Appeal and Error.** An appellate court has the power on direct appeal to remand a cause for the imposition of a lawful sentence where an erroneous one has been pronounced.

Petition for further review from the Court of Appeals, Moore, Chief Judge, and Inbody and Pirtle, Judges, on appeal thereto from the District Court for Saline County, Vicky L. Johnson, Judge. Judgment of Court of Appeals affirmed in part, and in part vacated and remanded for resentencing.

Brett McArthur for appellant.

Douglas J. Peterson, Attorney General, Erin E. Tangeman, and, on brief, George R. Love for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Miller-Lerman, J.

## I. NATURE OF CASE

Abel Mendez-Osorio was convicted and sentenced in the district court for Saline County for terroristic threats, use of a weapon to commit a felony, and negligent child abuse. Mendez-Osorio appealed to the Nebraska Court of Appeals and claimed ineffective assistance of trial counsel in various respects, including failing to adequately prepare for trial and failing to assert various objections to trial evidence. Mendez-Osorio claimed, in particular, that the evidence was insufficient to support a finding that he was guilty of negligent child abuse. The Court of Appeals rejected his claims and affirmed his convictions and sentences. We granted Mendez-Osorio's petition for further review. Upon further review, we affirm the decision of the Court of Appeals, which rejected Mendez-Osorio's claims of ineffective trial counsel and determined that the evidence supported Mendez-Osorio's convictions. However, because we find plain error in sentencing, we vacate all sentences and remand the cause for resentencing.

## II. STATEMENT OF FACTS

On October 26, 2015, Mendez-Osorio was charged by information with count I, terroristic threats under Neb. Rev. Stat.

§ 28-311.01(1) (Reissue 2016); count II, use of a weapon to commit a felony under Neb. Rev. Stat. § 28-1205(1) (Reissue 2016); and count III, misdemeanor negligent child abuse under Neb. Rev. Stat. § 28-707(1) and (3) (Reissue 2016). For completeness, we note that both the caption of the information and the body of count II refer to "use of a weapon to commit a felony" and cite to § 28-1205(1), which is the use crime and was a Class II felony at the time of the incident. Compare § 28-1205(2) (providing for "possession" of weapon during commission of felony, Class III felony). Although there is surplusage in the body of count II referring to the "possession" crime, the case was tried and charged as a "use" crime and the verdict returned by the jury provided for "GUILTY of using a machete or any other weapon . . . **Use of a Weapon to Commit a Felony**." Thus, the incidental reference to "possession" in the information is of no legal consequence.

The charges arose from a domestic incident on September 4, 2015, with Katia Santos-Velasquez, with whom Mendez-Osorio lived in a two-bedroom mobile home. The couple never married but had three children together who were between the ages of 3 and 6. Mendez-Osorio's case was tried to a jury.

Santos-Velasquez testified at trial that she and Mendez-Osorio had argued earlier in the day and that they later argued again about who would leave to buy a pizza for the children's supper. Mendez-Osorio left but did not return until around 11:20 p.m. At that time, the two youngest children were in the larger bedroom, and the oldest child was asleep on the couch. Santos-Velasquez heard Mendez-Osorio enter the home and proceed to the smaller bedroom. Santos-Velasquez testified that Mendez-Osorio was upset and that "every time that he got upset, I would just stay quiet, keep quiet."

Santos-Velasquez testified that from the bedroom door, she observed Mendez-Osorio sharpening his machete. Santos-Velasquez testified that Mendez-Osorio said to her, "this machete, I want it for you" and that he came toward her and told her he was going to kill her. She testified that she

felt threatened and afraid. Without pausing to put on shoes, Santos-Velasquez picked up her two youngest children from the home's larger bedroom and fled the home to seek help. Her third child was asleep on a couch in the living room, and she did not have time to bring him. Santos-Velasquez testified that she was concerned for the safety and well-being of her children, "[b]ecause if he was thinking of doing something to me, he was going to do it to the children too." She was especially concerned for the child she left behind.

Santos-Velasquez testified that after fleeing the mobile home, she ran barefoot to the home of a neighbor and friend, Maria Amador, where she asked for help. Shortly thereafter, Officer Jon Pucket with the Crete Police Department responded and interviewed her at the Amador home. Santos-Velasquez testified that Officer Pucket recommended she obtain a protection order, but she declined because she was afraid of Mendez-Osorio.

Officer Pucket testified that he arrived at the mobile home court within a couple of minutes of 11:20 p.m. There, he observed Santos-Velasquez shoeless, crying, and physically shaking. He testified that her voice was shaking and that she looked "terrified." She stated that she had run out the door of her mobile home with two of her children. Officer Pucket testified that he saw the two children crying. Santos-Velasquez told Officer Pucket that Mendez-Osorio had been sharpening the machete and that he said he was going to kill her and nobody would notice.

Officer Pucket then interviewed Mendez-Osorio, who had remained in the mobile home. Mendez-Osorio stated that nothing happened that night. Officer Pucket asked to see the machete, and Mendez-Osorio led him to a closet where it was sheathed. Mendez-Osorio stated that he had had the machete for only 3 days and that a friend from Wilber, Nebraska, brought him the machete to sharpen.

Amador testified that she and her children were sleeping when she awoke to Santos-Velasquez' knocking on the door

very hard. Santos-Velasquez was crying and afraid and had stated that her husband had a machete and wanted to kill her. Amador testified that one of Santos-Velasquez' children was afraid, so she invited the children to enter her home, and they did. Santos-Velasquez stated that her oldest child was still in the mobile home with Mendez-Osorio and expressed a fear that Mendez-Osorio would "do something to him."

Zoraida Ramos, a city employee who translated between Mendez-Osorio and Officer Pucket, also testified at trial. Ramos observed Santos-Velasquez return to her home after Mendez-Osorio had been taken away by the police. Santos-Velasquez appeared to be nervous and shaking. She was barefoot, her hair was "a mess," and her clothes were in disarray. Santos-Velasquez told Ramos that she and Mendez-Osorio had argued, that he came at her with a machete and put it to her throat, but that she got away and fled the mobile home with two of her children.

Ramos also testified that she observed Santos-Velasquez and Mendez-Osorio's mobile home and that it was "a mess," with minimal furniture in bad shape, and without a working kitchen faucet. Ramos testified that Santos-Velasquez stated that in order to wash dishes, she filled a container in the bathroom with water and then boiled the water.

Arnaldo Leyva testified on behalf of Mendez-Osorio. He testified that he was a coworker of Mendez-Osorio and that he had asked Mendez-Osorio to loan his machete so that Leyva could cut grass. Mendez-Osorio agreed. Leyva lived in Wilber at the time and intended to pick up the machete on September 5, 2015.

The jury found Mendez-Osorio guilty on all counts. On May 9, 2016, the district court sentenced Mendez-Osorio to imprisonment with the Nebraska Department of Correctional Services for 3 years for terroristic threats, for 4 years for use of a weapon to commit a felony, and for 1 year for negligent child abuse. The court stated that "[s]uch sentences shall run concurrent to each other . . . ." The court further sentenced

Mendez-Osorio to "eighteen (18) months of post-release supervision on Count 1 [terroristic threats] and twenty-four (24) months of post-release supervision on Count 2 [use of a weapon], concurrent to each other."

Mendez-Osorio appealed his convictions and sentences to the Court of Appeals. He claimed on appeal that there was not sufficient evidence to support his conviction for negligent child abuse. He also asserted several claims of ineffective assistance of trial counsel, which he argued as two general claims: (1) that counsel failed to adequately prepare for trial and (2) that counsel failed to object to questions that were leading and that called for hearsay.

In a memorandum opinion filed on January 26, 2017, the Court of Appeals rejected Mendez-Osorio's claims. With regard to Mendez-Osorio's claims of ineffective assistance of counsel, the Court of Appeals rejected certain specific claims and determined that the record on direct appeal was not sufficient to consider his remaining claims. The Court of Appeals first rejected Mendez-Osorio's claim that counsel was ineffective for failing to interview potential witnesses. The Court of Appeals rejected this claim because Mendez-Osorio failed to identify any specific witnesses or explain how their testimony could have helped his defense. The Court of Appeals also rejected Mendez-Osorio's claim that counsel was ineffective for failing to object to the State's questioning of Officer Pucket and Amador regarding statements that Santos-Velasquez had made to each of them on the night of the incident. The Court of Appeals reasoned that even if counsel had objected to these statements based on hearsay, the statements would have been admissible as excited utterances, because the evidence showed that the victim made the statements to Officer Pucket and Amador shortly after the incident and that she was still distraught at the time she made the statements. Finally, the Court of Appeals determined that the record on direct appeal was not sufficient to consider Mendez-Osorio's remaining claims of ineffective assistance of counsel. The

Court of Appeals generally reasoned that the claims required "an evaluation of counsel's trial strategy, for which the record is insufficient."

With regard to sufficiency of the evidence for the conviction for misdemeanor negligent child abuse, Mendez-Osorio argued that there was no evidence that he directly threatened or harmed the children and no evidence regarding any effect his actions against Santos-Velasquez had on the children. The Court of Appeals noted that Mendez-Osorio was charged with child abuse pursuant to § 28-707, which provides that one commits child abuse if he or she negligently causes or permits a minor child to be, inter alia, "[p]laced in a situation that endangers his or her life or physical or mental health," § 28-707(1)(a), or "[d]eprived of necessary food, clothing, shelter, or care," § 28-707(1)(c). The Court of Appeals noted testimony that Officer Pucket observed the two children who had been taken from the mobile home crying, and it determined that it could be inferred from such evidence that the children were crying because their mother was fearful of their father, which could have an effect on their mental health. The Court of Appeals further noted evidence that the mobile home was in poor condition and that there was nothing in the home to feed the children, and it determined that this evidence could support a finding that the children had been deprived of necessary food, shelter, or care. The Court of Appeals concluded that there was sufficient evidence to support a conviction for negligent child abuse.

The Court of Appeals affirmed Mendez-Osorio's convictions and sentences. We granted Mendez-Osorio's petition for further review.

## III. ASSIGNMENTS OF ERROR

On further review, Mendez-Osorio repeats, summarized and restated, the arguments he made before the Court of Appeals regarding effectiveness of trial counsel and sufficiency of evidence regarding his conviction for negligent child abuse. He

claims that the Court of Appeals erred when it rejected his ineffective assistance of counsel claim and affirmed his conviction for negligent child abuse.

## IV. STANDARDS OF REVIEW

[1,2] Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Loding*, 296 Neb. 670, 895 N.W.2d 669 (2017). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

[3] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. McCurry*, 296 Neb. 40, 891 N.W.2d 663 (2017).

[4] Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Ramirez*, 287 Neb. 356, 842 N.W.2d 694 (2014).

## V. ANALYSIS

As explained below, we affirm the decision of the Court of Appeals which rejected Mendez-Osorio's claims of ineffective assistance of counsel and affirmed his conviction for

negligent child abuse. In addition, we find plain error in two respects: (1) in imposing a period of postrelease supervision where one of the convictions, use of a deadly weapon to commit a felony, is a Class II felony, see Neb. Rev. Stat. § 28-105(6) (Supp. 2015), and (2) in sentencing Mendez-Osorio to concurrent sentences where a sentence for felony use of a weapon has been imposed, see § 28-1205(3). Accordingly, we affirm the decision of the Court of Appeals affirming Mendez-Osorio's convictions, and we vacate his sentences and remand the cause for resentencing.

## 1. Ineffective Assistance of Counsel

With regard to Mendez-Osorio's claims of ineffective assistance of counsel, the Court of Appeals rejected certain specific claims and determined that the record on direct appeal was not sufficient to consider his remaining claims.

[5,6] Mendez-Osorio is represented on direct appeal by different counsel than the counsel who represented him at trial. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Loding, supra*. Otherwise, the issue will be procedurally barred. *Id*. The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id*. The determining factor is whether the record is sufficient to adequately review the question. *Id*.

[7] We clarified in *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014), that allegations of how the defendant was prejudiced by trial counsel's allegedly deficient conduct are unnecessary to the specific determination of whether a claim of ineffective assistance of counsel can be determined based on the record on direct appeal. See, also, *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014). In the case of an argument presented for the purpose of avoiding procedural bar to

a future postconviction proceeding, appellate counsel must present a claim with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *Id.*

[8] To prevail on a claim based on counsel's ineffective assistance, the defendant must show, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), that counsel's performance was deficient. In other words, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. See *State v. Loding*, 296 Neb. 670, 895 N.W.2d 669 (2017). Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *Id*. To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. A court may address deficient performance and prejudice in either order. *Id*.

(a) Preparation for Trial

The Court of Appeals first rejected Mendez-Osorio's claim that counsel was ineffective for failing to interview potential witnesses. The Court of Appeals noted that Mendez-Osorio failed to identify any specific witnesses or make a claim as to how their testimony could have helped his defense. Thus, the Court of Appeals was effectively unable to determine whether this claim could be decided upon the trial record. The Court of Appeals rejected this claim, and we find no error in its decision.

Our review of the record shows that trial counsel for Mendez-Osorio called a witness about the machete, but the witness' testimony contradicted Mendez-Osorio's statements to Officer Pucket to the effect that he did not own the machete.

Mendez-Osorio contends that trial counsel may not have spoken with the witness or perhaps other witnesses. The record is incomplete on the matter, and the Court of Appeals did not err when it rejected this claim on direct appeal.

### (b) Objections at Trial

[9] The Court of Appeals also rejected Mendez-Osorio's claim that counsel was ineffective for failing to object to the State's questioning of Officer Pucket and Amador regarding statements Santos-Velasquez made to each of them on the night of the incident. The Court of Appeals reasoned that even if counsel had objected to these statements based on hearsay, the statements would have been admissible as excited utterances, because the evidence showed that the victim made the statements to Officer Pucket and Amador shortly after the incident and that she was still distraught at the time she made the statements. See Neb. Rev. Stat. § 27-803(1) (Reissue 2016) (providing that statement relating to startling event made while declarant was under stress of excitement caused by event is not excluded by hearsay rule). We have observed that excited utterances are an exception to the hearsay rule, because the spontaneity of excited utterances reduces the risk of inaccuracies inasmuch as the statements are not the result of a declarant's conscious effort to make them. *State v. Britt*, 293 Neb. 381, 881 N.W.2d 818 (2016).

We further note that both Officer Pucket and Amador testified live at trial; thus, Mendez-Osorio had the ability to cross-examine them and avoid prejudice due to their testimony. The Court of Appeals did not err when it rejected this claim.

### (c) Other Claims

The Court of Appeals rejected the remainder of Mendez-Osorio's claims of ineffective counsel, not repeated here, and generally concluded that the record on direct appeal was not sufficient to consider the remaining claims. The Court of Appeals stated that the claims required "an evaluation of

counsel's trial strategy, for which the record is insufficient." We have examined the record and Mendez-Osorio's remaining claims, and we determine that the Court of Appeals did not err when it concluded that the remaining claims cannot be resolved on direct appeal.

## 2. Sufficiency of the Evidence for Misdemeanor Negligent Child Abuse

A person commits child abuse if he or she knowingly, intentionally, or negligently causes or permits a minor child to be placed in a situation that endangers his or her life or physical or mental health, or to be deprived of necessary food, clothing, shelter, or care. § 28-707(1)(a) and (c). According to the jury verdict, Mendez-Osorio was found guilty of "negligently causing or permitting minor children to be placed in a situation that endangered their lives or physical or mental health on or about the 4th day of September, 2015." See § 28-707(1)(a). We sometimes refer to this crime as "endangerment." Section 28-707(3) provides that child abuse is a Class I misdemeanor "if the offense is committed negligently and does not result in serious bodily injury . . . or death." Based on the jury's verdict that Mendez-Osorio's conduct was negligent in nature and given the terms of § 28-707(3), Mendez-Osorio was convicted and sentenced for misdemeanor negligent child abuse.

### (a) Deprivation of Necessary Food, Clothing, Shelter, or Care

The Court of Appeals concluded that sufficient evidence existed to show that the condition of the mobile home supported a finding of child abuse, because the children were placed in a situation that was not meeting their basic needs of necessary food, shelter, and care under § 28-707(1)(c). However, as noted above, the jury made no such finding in this case. Because the jury reached a verdict based only and specifically on § 28-707(1)(a), pertaining to a situation that

endangers the life or physical or mental health of the children, the Court of Appeals erred when it considered whether there was sufficient evidence under § 28-707(1)(c). It was improper for the Court of Appeals to find support for the verdict on the basis of a theory not submitted to the jury. But, as we explain below, such error does not determine the outcome on further review.

(b) Endangerment

The Court of Appeals also determined that sufficient evidence of endangerment supported Mendez-Osorio's conviction for negligent child abuse under § 28-707(1)(a), and we agree. The record shows Santos-Velasquez testified that after Mendez-Osorio threatened her with the machete, she was afraid for her safety and for the safety and well-being of her children. Witnesses testified as to their observations of Santos-Velasquez and the children. The record shows Mendez-Osorio was aware that children were present in the mobile home when he threatened Santos-Velasquez with the machete. Officer Pucket testified that he observed the younger children crying, and Amador also testified that after Santos-Velasquez fled with the children to Amador's home, at least one of the children was afraid. The oldest child remained in the mobile home alone with Mendez-Osorio after Santos-Velasquez fled with his siblings. The Court of Appeals noted, inter alia, that the mental health of the children could be affected by their mother's fear of their father.

[10,11] Section 28-707(1) provides, in relevant part, "A person commits child abuse if he or she knowingly, intentionally, or negligently causes or permits a minor child to be: (a) [p]laced in a situation that endangers his or her life or physical or mental health." We have previously considered § 28-707(1)(a) and stated that under that section, "'endangers' means to expose a minor child's life or health to danger or the peril of probable harm or loss." *State v. Crowdell*, 234 Neb. 469, 474, 451 N.W.2d 695, 699 (1990). We have further stated

that the purpose of criminalizing conduct under the statute is that where "'a child is endangered, it may be injured; it is the likelihood of injury against which the statute speaks.'" *Id*. at 475, 451 N.W.2d at 699 (quoting *State v. Fisher*, 230 Kan. 192, 631 P.2d 239 (1981)). Although courts strictly construe criminal statutes, see *State v. Duncan*, 294 Neb. 162, 882 N.W.2d 650 (2016), we have recognized the breadth of conduct addressed in § 28-707(1)(a) and have stated that "[a]s a matter of practicability for general application, child abuse statutes, by virtue of the nature of their subject matter and the nature of the conduct sought to be prohibited, usually contain broad and rather comprehensive language." *State v. Crowdell*, 234 Neb. at 474, 451 N.W.2d at 699. As explained below, we believe that given the law and evidence regarding Mendez-Osorio's conduct and the children's exposure to the incident and its aftermath, Mendez-Osorio's conviction under § 28-707(1)(a) was supported by the evidence.

Nebraska's child endangerment statute is similar to that of other jurisdictions. Case law shows that other jurisdictions have utilized misdemeanor child endangerment statutes comparable to Nebraska's statute to penalize aggressors whose conduct exposed children to domestic violence. For example, in *People v. Burton*, 143 Cal. App. 4th 447, 49 Cal. Rptr. 3d 334 (2006), the California Court of Appeal affirmed a conviction for misdemeanor child endangerment. According to *Burton, supra*, the defendant cut the child's mother in the face and although the child was not a direct witness of the attack itself, the defendant knew of the child's presence at the scene of the attack, and the child saw the immediate aftermath. Citing authorities including journal articles, the court reasoned that the child's presence and witness to the aftermath of the defendant's conduct likely caused mental suffering similar to witnessing the attack itself. *Id*.

In *People v. Johnson*, 95 N.Y.2d 368, 740 N.E.2d 1075, 718 N.Y.S.2d 1 (2000), the New York Court of Appeals held that child endangerment applied to conduct endangering the

mental health of minors even where the violent actions were not specifically targeted at the children. *Johnson* involved a domestic assault. As the episode escalated, the children hid in their bedroom while the defendant assaulted their mother in the next room. *Id*. A New York criminal statute provides that a person endangers the welfare of a child when "[h]e or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old . . . ." N.Y. Penal Law § 260.10(1) (McKinney 2017). The court in *Johnson* noted that under this statute, the crime of endangerment is defined by the risk of injury produced by the defendant's conduct. "Endangering the welfare of a child is not defined by specifically targeted acts or individuals, but by conduct which a defendant knows will present a 'likelihood' of harm to a child (i.e., with an awareness of the potential for harm)." *Id*. at 372, 740 N.E.2d at 1076, 718 N.Y.S.2d at 2.

[12] Thus, we have long agreed with the reasoning expressed in cases like *Burton* and *Johnson* to the effect that criminal endangerment in § 28-707(1)(a) encompasses not only conduct directed at the child but also conduct which presents the likelihood of injury due to the child's having been placed in a situation caused by the defendant's conduct. See *State v. Crowdell*, 234 Neb. 469, 451 N.W.2d 695 (1990). We believe that by using the language "endangered" in § 28-707(1)(a), the Legislature expressed its intent to encompass, as a crime, child abuse resulting from certain conduct which exposes the child to harm even if the child was not the object of the defendant's conduct. See *State v. Graham*, 137 N.M. 197, 109 P.3d 285 (2005). That is, § 28-707(1)(a) covers both direct and indirect consequences of a defendant's conduct which place a child in a situation that endangers his life or physical or mental health. See *People v. Burton, supra*.

Our reasoning and that of the foregoing cases are supported by the academic literature. It is well established that children often witness domestic violence or its aftermath and suffer

adverse effects similar to victims of direct physical and sexual abuse. See *People v. Burton*, 143 Cal. App. 4th 447, 49 Cal. Rptr. 3d 334 (2006), citing to Gina L. Kershaw, Comment, *The Child Witness as a Victim of Domestic Violence: Prosecuting the Batterer Under California's Child Abuse Statute*, 19 J. Juv. L. 196 (1998). Nearly 20 years ago, it was noted that "[t]here are up to six million victims of domestic violence annually in the United States and half of these incidents occur in the presence of children." *People v. Burton*, 143 Cal. App. 4th at 456, 49 Cal. Rptr. 3d at 341.

Academic journals have long observed that a child's presence during domestic violence episodes has lasting health consequences even where the child did not directly observe the violence. In the article cited in *People v. Burton, supra*, it has been stated:

> Sleeping problems, and intense fears of going to bed at night have been associated with the pattern of violence in the home, since many times the abuse will occur after the child has gone to bed. This correlation secondarily indicates that children suffer the effects of domestic violence in the home, even when they are not actually in the presence of the abuse but can hear it from another room.

Kershaw, *supra* at 198. More recently, the literature indicates that exposure to domestic violence affects children's neurobiological well-being. See *Lynn Hecht Schafran, Domestic Violence, Developing Brains, and the Lifespan, New Knowledge From Neuroscience*, 53 Judges' J. 32 (Summer 2014).

Mendez-Osorio refers to the facts and makes several arguments to the effect that his conduct was not a crime under § 28-707(1)(a). These facts include the assertions that he did not threaten the children directly and that the children who were in the home did not witness the terrorization of Santos-Velasquez. Even assuming these facts are reflected in the record, Mendez-Osorio's arguments are unavailing.

Contrary to Mendez-Osorio's contention, a conviction under § 28-707(1)(a) does not require a direct threat by the

defendant upon the children. In this case, Mendez-Osorio's conduct caused Santos-Velasquez to flee the mobile home with the youngest children, who became upset and were made fearful by this incident. Mendez-Osorio's conduct, even if characterized as indirect, caused the children to be placed in a situation which endangered their well-being.

With respect to the contention that Mendez-Osorio's conviction under § 28-707(1)(a) is not warranted because the children did not witness the terrorization of Santos-Velasquez, we believe Mendez-Osorio misapprehends the law and we reject this argument. As we have discussed above, exposure to domestic crime can support a conviction under § 28-707(1)(a); the children need not witness the initial crime to become victims of endangerment.

An article cited in *People v. Johnson*, 95 N.Y.2d 68, 740 N.E.2d 1075, 718 N.Y.S.2d 1 (2000), observed that in this area of the law, "witnessing can be visual, auditory, or inferred from the aftermath of the violence—e.g., broken furniture, bruises, or parental apprehension when the abuser is present." Audrey E. Stone & Rebecca J. Fialk, *Criminalizing the Exposure of Children to Family Violence: Breaking the Cycle of Abuse*, 20 Harv. Women's L.J. 205, 207 (1997). In the instant case, given Santos-Velasquez' apprehension, two of the children were swept up in her flight to the neighbor's home to call law enforcement late at night and were effectively witnesses to the continuing aftermath and consequences of Mendez-Osorio's terrorization of Santos-Velasquez.

Based on the foregoing analysis of § 28-707(1)(a), and given the factual record, we determine that there was sufficient evidence upon which a rational jury could find Mendez-Osorio guilty of misdemeanor child abuse under § 28-707(1)(a), and we affirm his conviction thereunder.

### 3. Sentencing Errors

Although not asserted by either party in the appellate briefs and not discussed by the Court of Appeals, we note

plain error in two respects of the sentences imposed. As a result, we vacate the sentences and remand the cause for resentencing.

### (a) Misclassification of Use of
### a Weapon Conviction and
### Postrelease Supervision

In count II of the information, the State charged Mendez-Osorio with—and he was convicted of—a violation of § 28-1205(1), use of a deadly weapon to commit a felony when, as in this case, the weapon is not a firearm. At the time the crime occurred, § 28-1205 was a Class II felony. See § 28-1205(1)(b). The Legislature enacted 2015 Neb. Laws, L.B. 605, which became effective on August 30, 2015, prior to the events that led the State to bring charges against Mendez-Osorio and prior to sentencing. The sentencing order, however, erroneously describes the offense as a Class III felony. See § 28-1205(2)(b) (Cum. Supp. 2014). Evidently, because of this misclassification, the sentencing court went on to order postrelease supervision. This was not an authorized sentence and constituted plain error. See *State v. McCurry*, 296 Neb. 40, 891 N.W.2d 663 (2017).

Mendez-Osorio was convicted of terroristic threats, a Class IIIA felony, and use of a weapon, a Class II felony. Section 28-105(6) provides:

> Any person who is sentenced to imprisonment for a Class I, IA, IB, IC, ID, II, or IIA felony and sentenced concurrently or consecutively to imprisonment for a Class III, IIIA, or IV felony shall not be subject to post-release supervision pursuant to subsection (1) of this section.

The sentence imposing postrelease supervision in this case was not authorized and, in fact, contravened § 28-105(6). Compare *State v. Artis*, 296 Neb. 172, 893 N.W.2d 421 (2017) (determining that sentence with no period of postrelease supervision complied with § 28-105(6)). Accordingly, we

must vacate the foregoing sentences for terroristic threats and use of a weapon and remand the cause for resentencing.

### (b) Concurrent Sentences

We note an additional sentencing error not raised by the parties or the Court of Appeals. Although Mendez-Osorio was convicted of use of a weapon in violation of § 28-1205(1), the district court ordered all the sentences of imprisonment in this case to be served "concurrent to each other." The concurrent feature of the sentence for use of a weapon contravenes § 28-1205(3).

Section 28-1205(3) provides that "sentences imposed under this section shall be consecutive to any other sentence imposed." We have found plain error where a court ordered a sentence for use of a weapon to run concurrently to other felony sentences imposed. See *State v. Ramirez*, 287 Neb. 356, 842 N.W.2d 694 (2014)**.** See, also, *State v. McCurry, supra*. Although it is generally within the trial court's discretion to direct that sentences imposed for separate crimes be served concurrently or consecutively, § 28-1205(3) does not permit such discretion in sentencing. Instead, § 28-1205(3) mandates that a sentence for the use of a deadly weapon in the commission of a felony be served consecutively to any other sentence imposed and concurrent with no other sentence. *State v. Ramirez, supra*.

Because § 28-1205(3) mandates that the sentence imposed for a conviction of use of a deadly weapon be consecutive to any other sentence and concurrent with no other sentence, the district court did not have the authority to order that the sentences for the conviction of use of a deadly weapon to commit a felony run concurrently with the other sentences. *State v. Ramirez, supra.* The imposition of the sentence wherein the sentences were all "concurrent to each other" was plain error. On this basis, the sentences for all convictions must be vacated and the cause remanded for resentencing.

### (c) Vacation of Sentences

[13] An appellate court has the power on direct appeal to remand a cause for the imposition of a lawful sentence where an erroneous one has been pronounced. *Id*.; *State v. Gunther*, 271 Neb. 874, 716 N.W.2d 691 (2006). Accordingly, we vacate all sentences and remand the cause for resentencing.

## VI. CONCLUSION

In this direct appeal, the Court of Appeals did not err when it rejected Mendez-Osorio's claim of ineffectiveness of trial counsel and affirmed Mendez-Osorio's conviction for misdemeanor negligent child abuse. We affirm in part the decision of the Court of Appeals affirming Mendez-Osorio's convictions on all counts. However, because the district court imposed unauthorized sentences, we vacate all sentences and remand the cause for resentencing.

Affirmed in part, and in part vacated
and remanded for resentencing.