IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. ROY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

KYLIANNA M. ROY, APPELLANT.

Filed July 12, 2022.    No. A-21-865.

Appeal from the District Court for Lancaster County: KEVIN R. MCMANAMAN, Judge. Affirmed.

Timothy P. Sullivan, of Sullivan Law, for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

MOORE, RIEDMANN, and ARTERBURN, Judges.

ARTERBURN, Judge.

### INTRODUCTION

Kylianna M. Roy appeals from her plea-based conviction and sentence for tampering with physical evidence in the district court for Lancaster County. The district court sentenced her to 15 months' imprisonment followed by 12 months of post-release supervision. On appeal, Roy claims that her plea was not voluntarily made, that she was denied her right to effective assistance of trial counsel, and that the district court imposed an excessive sentence. For the reasons that follow, we affirm Roy's conviction and sentence.

### BACKGROUND

On February 11, 2021, Roy was charged by information with one count of tampering with physical evidence and one count of tampering with a witness or informant, both Class II felonies.

- 1 -

Pursuant to a plea agreement, the State amended the information to charge Roy with one count of tampering with physical evidence, a Class IV felony.

A plea hearing was held on September 1, 2021. After the district court explained to Roy what she was charged with and the possible penalties, Roy pled no contest to the charge. The State provided a factual basis:

On July 11, 2020, the Lincoln Police Department responded to a report of an assault that occurred at an apartment complex. The victim, Timothy Colgan, reported that he was using his cell phone to take pictures of a red pickup truck that he believed was being used for drug trafficking. He was approached by Roy and her boyfriend, Andrew Barnhouse. Roy and Barnhouse were associated with the truck. Roy and Barnhouse confronted Colgan about the cell phone and the photographs. Colgan put his cell phone behind his back to prevent Barnhouse from taking the phone. After Colgan refused to give up the phone, Barnhouse punched Colgan in the face. Colgan reported that the cell phone was taken by Barnhouse and Roy.

A few days later, on July 13, 2020, police officers spoke with Roy via telephone. During this conversation, Roy told police that Barnhouse was not present during the incident and that she was the only one there. She also explained that an unknown person hit Colgan in the face. However, she later recanted this version of events.

During a subsequent conversation with law enforcement on July 20, 2020, Roy stated that Colgan's cell phone was hidden in Colgan's pickup truck and that it had been retrieved by Roy's friend. According to law enforcement, Roy intended to make it appear that Colgan was "setting Mr. Barnhouse up" on a false robbery charge. When law enforcement retrieved the cell phone, they determined that it did not belong to Colgan. It was determined that the phone belonged to an individual that was incarcerated with Barnhouse. The owner of the cell phone informed law enforcement it had been stolen. Roy admitted to police that she knew at the time of her report that the phone did not belong to Colgan.

On August 4, 2020, Roy admitted to law enforcement that Barnhouse had punched Colgan during their confrontation and that she had stolen the cell phone in order to delete the photographs taken by Colgan. She also admitted that she later assisted in "planting" a different cell phone in Colgan's vehicle. A recorded jail conversation between Roy and Barnhouse also indicated that Roy "planted" a phone and tampered with evidence.

Before accepting Roy's no contest plea to tampering with physical evidence, the district court asked Roy if anyone associated with law enforcement or the county attorney's office, or anyone else forced, threatened, or promised her anything to get her to enter her plea. Roy responded:

> Andrew Barnhouse's mom has threatened me this whole time, which is why I went in trying to alter everything and take the charges. I told that to [her defense counsel]. I never tried to lie in the first place but that lady sat there threatening my family and she did get my kids taken. So, yeah, I'm here taking a charge for somebody else, lying through my teeth, never even got to tell anybody the full truth as to what happened that day.

Roy's defense counsel acknowledged that she previously spoke to Roy about her accusations regarding Barnhouse's mother. Roy and her defense counsel then met privately, off of the record. When they returned, Roy's defense counsel stated:

[A]fter further conversation with my client I would just note that my client's position is that she took a charge for Mr. Barnhouse; however, she agrees that the facts recited can be used to accept her plea and she's entering the plea knowingly, voluntarily, and freely, and no one is forcing her to enter that plea. What she was attempting to indicate to the Court was she took the charge based on what she felt was duress from Mr. Barnhouse's mother. But she is fine moving forward with the plea.

The district court clarified with Roy:

THE COURT: Let me get that clarification from Ms. Roy because I think that I had -- I heard various descriptions and accounts in her prior statement. So, I want to get some clarification from her now.

Ms. Roy, has anybody connected with law enforcement or the county attorney's office, or anybody else made any promise to you, or forced you, or threatened you in any way to get you to enter your plea to these charges?

[ROY]: No, not the plea. [Trial counsel] said it correctly. It was back when it first started, his mom pressured me into taking the charges.

THE COURT: To taking -- to doing the acts which led to the charges?

[ROY]: Yeah.

THE COURT: All right. That's different than taking the charges, isn't it?

[ROY]: She -- when I said that if I didn't -- be better way to get the charges off of him or lessen his so he didn't get the habitual -- she was going to get kids taken.

THE COURT: So you're -- so, are you saying your decision to do the act, which was the subject of -- which resulted in the charge is where the duress was, but not at this point in making your plea? Is that fair to say?

[ROY]: Correct.

The district court continued with the plea colloquy:

THE COURT: There is -- it is important and it must be the case that your plea is freely, voluntarily, intelligently, and knowingly made, Ms. Roy.

[ROY]: Yes.

THE COURT: Has anyone made any promises to you as to what the actual sentence will be?

[ROY]: No.

Roy then affirmatively stated that she was satisfied with the advice and representations given by her attorney. Before the district court ultimately accepted the no contest plea, it explicitly asked Roy if she still wanted the court to accept her plea. Roy stated that she still wanted to proceed. The district court then accepted the no contest plea and ordered a presentence investigation to be completed.

Sentencing occurred on September 28, 2021. Roy's trial counsel argued that Roy had tampered with evidence in order to protect Barnhouse. As a result of this mitigating circumstance, her counsel requested a sentence of probation or one which would only require Roy to engage in community service. Roy spoke to the court on her own behalf and apologized for her actions.

The State disagreed with Roy's request for probation and asked the district court to impose a sentence which included some period of incarceration. In support of its request, the State noted that according to the presentence investigation report (PSR) Roy was placed in the high risk to reoffend category on the level of service case management (LS/CMI) scale with high risk areas in leisure and recreation, companions, drug and alcohol use, pro-criminal attitude, and antisocial patterns. Other evidence in the PSR indicated that Roy had previously sold drugs. The State also argued that Roy had not accepted responsibility for her actions because she repeatedly lied to law enforcement about her involvement in the circumstances which led to her conviction.

The district court explained that it had considered Roy's age, mentality, education, experience, and social and cultural background. The district court explained that it had also considered all of the information contained in the PSR. After the district court recounted the factual predicate for the offense, the court stated:

> So, it is probably more -- I mean I'm not -- you've told various stories at various points during this case. I don't know if you know what stories you told to what people now, but there's been a lot of deception and I don't -- I don't see -- I don't see you taking responsibility for that and coming and asking for community service and describing the events as you did, continues in that pattern.

The district court ultimately determined that substantial and compelling reasons existed not to place Roy on probation and that a lesser sentence would depreciate the seriousness of the crime and would promote disrespect for the law. The district court sentenced Roy to a term of 15 months' imprisonment followed by 12 months of post-release supervision.

Roy now appeals to this court.

## ASSIGNMENTS OF ERROR

Reordered and restated, Roy assigns and argues that the district court committed plain error by accepting her plea because it was not voluntarily made. She also assigns and argues that she received ineffective assistance of counsel because her trial counsel failed to adequately investigate her case; advised her that she would receive probation if she pled guilty; and failed to object to the district court's acceptance of her no contest plea or file a motion to withdraw her plea. Finally, Roy assigns and argues that the district court imposed an excessive sentence.

## STANDARD OF REVIEW

Plain error may be found on appeal when an error unasserted or uncomplained of at trial, is plainly evident from the record, affects a litigant's substantial right, and if, uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Mann*, 302 Neb. 804, 925 N.W.2d 324 (2019).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Mendez-Osorio*, 297 Neb. 520, 900 N.W.2d 776 (2017). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

- 4 -

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Iddings*, 304 Neb. 759, 936 N.W.2d 747 (2020). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right, and denying a just result in matters submitted for disposition. *State v. Parminter*, 283 Neb. 754, 811 N.W.2d 694 (2012).

ANALYSIS

*Voluntariness of No Contest Plea.*

Roy asserts that the district court committed plain error in accepting her no contest plea because she asserts that her plea was not voluntarily made.

To support a finding that a defendant freely, intelligently, voluntarily, and understandingly entered a guilty or no contest plea, a court must inform a defendant of (1) the nature of the charge, (2) the right to assistance of counsel, (3) the right to confront witnesses against the defendant, (4) the right to a jury trial, and (5) the privilege against self-incrimination. *State v. Carr*, 294 Neb. 185, 881 N.W.2d 192 (2016). The record must show a factual basis for the plea and that the defendant knew the range of penalties for the crime charged. *Id.* Taking the foregoing steps is enough to ensure that a plea is a voluntary and intelligent choice among the alternative courses of action open to a defendant, which is the ultimate standard by which we test pleas of guilty or no contest. *Id.*

The Nebraska Supreme Court has previously explained that a defendant can freely, intelligently, voluntarily, and understandingly enter his or her guilty or no contest plea even if the court does not inform him or her of the right to counsel. *Id.*

In *State v. Carr, supra*, the Supreme Court noted that the defendant had appointed counsel at the plea hearing and told the court that he had spoken with his attorney about his trial rights and had sufficient time to do so. *Id.* Moreover, the attorney told the court that she had spoken with the defendant about his rights and that he understood them and believed that he was "freely, voluntarily, knowingly, and intelligently" waiving his trial rights. *Id.*

In the present case, the district court explained to Roy the nature of the charge, the right to confront witnesses against her, the right to a jury trial, and the privilege against self-incrimination. In addition, the district court explained the range of penalties and only accepted the plea after the factual basis was provided. We do note that during the plea colloquy, the court did not explicitly advise Roy that she had the right to an attorney. However, Roy's appointed counsel appeared with her at both the plea and sentencing hearings and Roy explicitly informed the court that she had previously discussed all of her rights with her attorney. Roy's counsel also informed the court that she had spoken to Roy about her trial rights and that she believed that Roy understood those rights. Given the district court's advisement of Roy's rights and the recitation of the factual basis, we can find no plain error in the district court's determination that Roy's no contest plea was voluntarily made.

In her brief on appeal, Roy asserts that her plea was not made voluntarily because she was under duress at the time she entered her plea. The record affirmatively refutes this claim. Roy informed the court that she received threats from Barnhouse's mother which resulted in her attempts to deceive law enforcement about the circumstances surrounding Barnhouse's arrest. She informed her trial counsel of these actions. Following a private conversation, her trial counsel

noted that Roy would move forward with the plea. Upon further questioning from the district court, she explained that these threats occurred prior to her deceiving law enforcement. However, these threats did not continue to the time wherein she agreed to change her plea. She affirmatively stated that there were no threats made toward her with the purpose of coercing her into entering her no contest plea. It was only after the district court clarified these issues with Roy that it found that the no contest plea was voluntarily made. Therefore, we find this assignment of error to be without merit.

*Ineffective Assistance of Counsel.*

When, as here, a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred. See *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015). The voluntary entry of a guilty plea or a plea of no contest waives every defense to a charge, except for the defenses of insufficiency of the indictment, information, or complaint; ineffective assistance of counsel; and lack of jurisdiction. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). Thus, when a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *Id.*

The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Mendez-Osorio*, 297 Neb. 520, 900 N.W.2d 776 (2017). The determining factor is whether the record is sufficient to adequately review the question. *Id.* The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as part of any plausible trial strategy. *State v. Blaha, supra.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015). When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *State v. Blaha, supra.* When the claim is raised in a direct appeal the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021). An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes either that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *State v. Casares, supra.*

Roy specifically assigns and argues that she received ineffective assistance of trial counsel because her trial counsel (1) failed to investigate the case, (2) advised her to plead guilty based on an erroneous belief that she would receive probation, and (3) failed to object to the district court's acceptance of her plea or move to withdraw her plea because her plea was not voluntarily made. We address these arguments, in turn.

When the claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Wood*, 310 Neb. 391, 966 N.W.2d 825 (2021). In the context of a claim of ineffective assistance of counsel on direct appeal for an alleged failure to investigate, the Supreme Court has previously rejected a claim where the appellant failed to specify what component of investigation his counsel was allegedly deficient in failing to conduct. *Id.* See, also, *State v. Stelly*, 304 Neb. 33, 932 N.W.2d 857 (2019) (finding that appellant did not allege deficient performance with sufficient particularity when appellant failed to specify what testimony his counsel should have sought to elicit or from whom). Similarly, Roy broadly alleges that counsel failed to adequately investigate her case but does not specifically allege what exculpatory evidence would have been discovered in the course of such investigation and why that evidence would have changed Roy's mind about pleading no contest to the charge. As such, the facts alleged by Roy in this regard are speculative and insufficient to show any deficiency in trial counsel's investigatory efforts. Accordingly, we find that Roy did not allege deficient performance with sufficient particularity for us to address this assignment of error.

Roy asserts that she received ineffective assistance of trial counsel because Roy was advised to plead guilty based on an erroneous belief that she would receive probation. Roy also notes that the record is insufficient to resolve her claim. On direct appeal, our appellate review of ineffective assistance claims requires more than just noting the claims and postponing consideration for another day. *State v. Stelly, supra.* Here, the record directly refutes her claim. When Roy was asked by the court if anyone had made any promises to her as to what the actual sentence would be, Roy said no. The Supreme Court has repeatedly found that when the record shows that a defendant at a plea hearing specifically denies that any promise has been made to them regarding sentence, a claim that they received ineffective assistance of counsel when trial counsel incorrectly advised the appellant regarding the sentence that may be imposed is without merit. See, *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018); *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015); *State v. Vo*, 279 Neb. 964, 783 N.W.2d 416 (2010). Accordingly, we find this claim to be without merit.

Roy finally asserts that she received ineffective assistance of trial counsel because her trial counsel failed to object to the district court accepting her plea or file a motion to withdraw her plea. Roy asserts that her plea was not made voluntarily. As we discussed above, Roy's plea was voluntarily made and her counsel cannot be ineffective for failing to raise a meritless argument. See *State v. Collins*, 299 Neb. 160, 907 N.W.2d 721 (2018).

Therefore, we find that both of Roy's claims of ineffective assistance of counsel are without merit.

*Excessive Sentence.*

Finally, Roy argues that the district court erred in imposing an excessive sentence.

Roy was convicted of one count of tampering with physical evidence, a Class IV felony, pursuant to Neb. Rev. Stat. § 28-922 (Reissue 2016). A Class IV felony is punishable by a maximum of 2 years' imprisonment and 18 months' post-release supervision, a $10,000 fine, or both; there is no minimum term of imprisonment. See Neb. Rev. Stat. § 28-105(1) (Cum. Supp.

2020). The district court sentenced Roy to 15 months' imprisonment followed by 12 months of post-release supervision. Roy's sentence is clearly within the statutory limits. As such, we consider whether the district court abused its discretion in rendering the sentence ordered.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the crime. *State v. Morton*, 310 Neb. 355, 966 N.W.2d 57 (2021). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Roy was 36 years old at the time of sentencing. She was unemployed. Roy has a significant criminal history, which includes two prior convictions for assault out of Sherman County, for which she was serving a 2-year term of probation at the time she committed the present offense. She also had two prior convictions for theft by shoplifting and two convictions for issuing bad checks. At the time of her sentencing in this case, Roy was also facing criminal cases for charges of contributing to the delinquency of a child and shoplifting in Buffalo County and two counts of possession of methamphetamine and one count of theft by receiving stolen property in Douglas County. The alleged offenses in Douglas County also occurred after Roy was placed on probation in Sherman County.

LS/CMI testing conducted by the probation office revealed that Roy posed a high risk of re-offense. Although Roy and her trial counsel advocated in favor of a sentence of community service, the district court concluded that such a sentence would depreciate the seriousness of Roy's actions. The district court found that Roy did not accept any responsibility for her actions by asking for community service or by changing her description of the circumstances surrounding her conviction.

Our review of the record reveals that the district court carefully considered all of the relevant information in making its sentencing determination. There is no indication that the court relied on incorrect information or that it failed to consider any of the mitigating factors present in the case. Rather, the court weighed the information before it and sentenced Roy to a term of 15 months' incarceration plus 12 months' post-release supervision. Roy's sentence is within the statutory limits and is not an abuse of discretion.

CONCLUSION

For the reasons set forth above, we affirm Roy's conviction and sentence.

AFFIRMED.