IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. TAYLOR

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MICAH D. TAYLOR, APPELLANT.

Filed August 4, 2020.    No. A-19-965.

Appeal from the District Court for Douglas County: THOMAS A. OTEPKA, Judge. Affirmed as modified.

Gregory A. Pivovar for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

INTRODUCTION

Micah D. Taylor appeals from his plea-based conviction and sentence in the district court for Douglas County for second degree assault on an officer and operating a motor vehicle to avoid arrest. The district court sentenced him to consecutive terms of 30 to 50 years' and 1 to 2 years' imprisonment, respectively. On appeal, Taylor claims that the district court imposed an excessive sentence and that he was denied his right to effective assistance of trial counsel. For the reasons that follow, we affirm Taylor's conviction and sentence as modified.

BACKGROUND

On March 12, 2018, Taylor was charged in the county court with four felony counts arising out of an incident that occurred on March 8:

(1) Second degree assault on an officer, emergency responder, or healthcare professional in violation of Neb. Rev. Stat. § 28-930 (Reissue 2016), a Class II felony;

(2) Operating a motor vehicle to avoid arrest willful reckless driving in violation of Neb. Rev. Stat. § 28-905(1) and (3)(a)(iii) (Reissue 2016), a Class IV felony;

(3) Delivery, distribution, dispensing, manufacturing, or possession with intent to distribute, deliver, dispense, or manufacture of marijuana in violation of Neb. Rev. Stat. § 28-416(1) and (2)(b) (Reissue 2016), a Class IIA felony; and

(4) Possession of a deadly weapon (not firearm) during commission of a felony in violation of Neb. Rev. Stat. § 28-1205(2)(a) and (b) (Reissue 2016), a Class III felony.

Taylor was arrested on March 10 and placed into custody. On April 4, Taylor's case was bound over to the district court after he waived his right to a preliminary hearing.

At a plea hearing on April 9, 2019, Taylor agreed to enter guilty pleas to counts one and two in exchange for the State dismissing counts three and four. The court advised Taylor that he would be giving up certain constitutional rights by entering a guilty plea. The court also advised Taylor of the applicable statutory sentencing ranges for the two charges to which he was entering guilty pleas. When asked, Taylor confirmed that he had enough time to speak with his attorney, that there were no defenses that he had not discussed with his attorney, that no promises or threats had been made to induce his plea, and that his pleas were offered freely and voluntarily. The court asked Taylor whether he was satisfied with his attorney's representation, to which Taylor replied, "Yeah. I think he's great."

The State then provided a factual basis for Taylor's pleas. According to that factual basis, officers from the Omaha Police Department and the Bureau of Alcohol, Tobacco, Firearms, and Explosives conducted a controlled buy of marijuana from Taylor on March 8, 2018. Following the controlled buy, the officers maintained surveillance of Taylor as he was driving until Officer Dave Staskiewicz conducted a probable cause stop.

Staskiewicz approached Taylor in his vehicle, identified himself, and asked Taylor to exit his vehicle. When Taylor became uncooperative, Staskiewicz attempted to forcibly remove him from the vehicle. Taylor then accelerated, dragging Staskiewicz a short distance. Staskiewicz drew his service weapon during the same time period and fired three rounds, striking Taylor in the neck once. Taylor continued driving and fled from the traffic stop. Officers pursued him as he drove recklessly and at a high rate of speed, and they eventually caused him to stop using spike strips. Staskiewicz was treated for his injuries, which included scrapes and bruises. He also reported significant back problems as a result of being dragged by Taylor's vehicle.

The court found that the State offered a sufficient factual basis, that Taylor understood the nature of the charges against him and the possible sentences he faced, and that he entered his pleas freely, knowingly, intelligently, and voluntarily. Thus, the court accepted Taylor's pleas to counts one and two and sustained the State's motion to dismiss counts three and four. The court ordered that a presentence investigation report (PSI) be completed and scheduled sentencing for a future date.

When he was interviewed for the PSI, Taylor said that he was set up by a friend who wanted to buy marijuana and a gun from him. He acknowledged selling his friend half a pound of

marijuana before being pulled over by a uniformed officer in an unmarked car. Taylor said that when the officer began to remove him from the vehicle, he "wasn't even sure he was a cop at [that] point. He was acting strange." Taylor also said, "I used bad judgment and made a small mistake, huge."

The PSI identified numerous juvenile criminal offenses, including charges for criminal mischief, third degree assault, and harm to self or others. Taylor was placed on indefinite juvenile probation in December 2012 relating to those charges. He entered drug treatment court in September 2013, and its jurisdiction was terminated in June 2015 after Taylor unsuccessfully completed its conditions. Taylor was fined for possessing marijuana in 2015 and 2017 and for possessing alcohol as a minor aged 19 or 20 in 2016. In October 2017, he was charged with strangulation, a Class IIIA felony, to which he entered a guilty plea on September 9, 2018.

Taylor was assessed utilizing the Level of Service/Case Management Inventory (LS/CMI), scoring at high risk of reoffending overall as well as in five out of eight individual domains: criminal history, education/employment, leisure/recreation, alcohol/drug problems, and antisocial pattern. Taylor had been expelled from high school for having alcohol on school property and behavioral and attendance problems. Prior to his incarceration for the present offense, he was working two restaurant jobs and, on his off days, was doing painting and drywall work. Taylor stated that he is not a member of any formal organizations or community-organized activities but had attended a Christian church in the past before converting to Judaism at age 20. His hobbies include poetry, music, working out five times per week, drawing, singing, writing, fishing, playing video games, and spending time with family and friends.

With respect to the alcohol/drug problems domain, Taylor's score on the Simple Screening Instrument indicated a minimal degree of risk for substance abuse, but his scores on the Substance Abuse Questionnaire demonstrated that he was defensive and guarded regarding self-disclosure, that drug abuse was likely, and that the risk of drug relapse was high. Taylor stated that he first consumed alcohol at age 16, binge drank for a few years until he attended treatment at age 18, and did not drink again until his 21st birthday. He said that he has not consumed alcohol again since turning 21 years old. Taylor began using marijuana at age 15 and became a daily user around the age of 18, which daily use continued through the time of his arrest.

According to the LS/CMI, Taylor scored at low risk of reoffending with respect to the family/marital domain. He was adopted at the age of 2 years and has six siblings. His parents divorced when he was 10 years old. Taylor is not married and has no children, and he was dating a woman at the time he was interviewed.

Taylor scored at medium risk of reoffending with respect to the LS/CMI domains of companions and procriminal attitude/orientation. He reported that the closest relationships in his life were with his mother, sister, grandmother, niece, and brother. The PSI notes that Taylor's sister has a criminal record and outstanding warrant. Taylor said that he was not a member of a gang.

The probation officer who completed Taylor's PSI said that Taylor "places considerable blame on others . . . and places considerable blame on the Omaha Police Officer pulling him over." The probation officer further stated that Taylor "minimized his actions in this offense" and was in the precontemplative stage of change, admitting his behavior but placing considerable blame

elsewhere. The probation officer advised that a term of probation was not appropriate and would promote disrespect for the law and that a straight sentence of incarceration was instead appropriate.

Staskiewicz and others offered victim impact statements, which were attached to the PSI. Staskiewicz stated that he activated his vehicle emergency lights to pull over Taylor, who was not cooperative from the very beginning of their encounter, first telling him to talk to his lawyer. When Taylor did not comply with Staskiewicz' instruction to exit his vehicle, he reached to pull Taylor out of the vehicle while Taylor grabbed ahold of his wrist and reached behind his seat. "Knowing his firearm history, it was at this time I started to fear for my life," Staskiewicz wrote. He subsequently fired three shots as Taylor began driving, dragging Staskiewicz "about a car length."

Once Taylor had been apprehended, emergency personnel transported Staskiewicz to the hospital for back and neck injuries, and he was eventually discharged without any broken bones in his back or neck. He stated that he went to physical therapy three times weekly for a year and had surgeries on his hip and shoulder. "Still today I'm in constant pain and have trouble sleeping every night because of it," Staskiewicz wrote. He eventually returned to work on March 18, 2019, but said that he remains in constant pain. Staskiewicz also noted that his absence from his work as a police officer, off-duty jobs, and holiday and overtime work placed a "severe" financial strain on his family. He concluded by noting that he had never previously written a victim impact statement despite being injured on the job numerous times during his 29 years as a law enforcement officer.

A sentencing hearing was held on September 9, 2019. Taylor exercised his right of allocution and stated, "I would like to say that I'm very sorry to the police officer that I hurt. I was only trying to get away after he pulled his gun. . . . I do want to say that I do accept full responsibility for what I did." Taylor also promised that he would not act the same way again and stated that what he did was reckless but not intentional.

Taylor's trial counsel argued during sentencing that Taylor "was punished as well at the scene" as he was shot in the back of his neck, fracturing part of his upper spine. He said that the bullet remains in Taylor's neck and causes chronic pain. "So the punishment phase started at the time [Taylor] panicked and took off." Taylor's counsel urged the court to sentence him to 3 or 4 to 20 or 25 years' imprisonment and to run his two sentences concurrently. He argued that would result in Taylor's incarceration for a shorter period of time with a significant period of parole.

The State emphasized that Taylor not only injured Staskiewicz but also put the public at considerable risk when he led law enforcement on a pursuit down the interstate before crashing and being taken into custody. Based on the facts of the case and Taylor's "fairly significant" criminal history, the State argued for a "significant sentence of incarceration." The State also highlighted Taylor's comments during his interview for the PSI that minimized his actions, blamed others, and lacked awareness of the risk he caused to the public.

The court stated that it read the numerous letters in support of both Staskiewicz and Taylor. The court also stated that it had reviewed the PSI fully and highlighted that Taylor had indicated that he was uncertain whether Staskiewicz was truly an officer when he was pulled over despite Staskiewicz being in uniform. Calling the events "pretty spectacular and inexcusable," the court noted the various injuries Staskiewicz suffered and the treatments that he required, including surgery. The court sentenced Taylor to a term of 30 to 50 years' imprisonment on count one and a

term of 1 to 2 years' imprisonment on count two and ordered that the sentences be served consecutively.

Taylor appeals.

ASSIGNMENTS OF ERROR

Taylor assigns, restated and consolidated, that he was denied the effective assistance of trial counsel and that the district court imposed an excessive sentence.

STANDARD OF REVIEW

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Loding*, 296 Neb. 670, 895 N.W.2d 669 (2017). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. *State v. Beehn*, 303 Neb. 172, 927 N.W.2d 793 (2019). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id*. With regard to questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's conclusion. *State v. Beehn, supra*.

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Mueller*, 301 Neb. 778, 920 N.W.2d 424 (2018).

An appellate court always reserves the right to note plain error that was not complained of at trial or on appeal. Plain error may be found on appeal when an error, plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Kantaras*, 294 Neb. 960, 885 N.W.2d 558 (2016). A sentence that is contrary to the court's statutory authority is an appropriate matter for plain error review. *Id*.

ANALYSIS

*Ineffective Assistance of Counsel.*

Taylor is represented in this direct appeal by different counsel than the counsel who represented him at the trial level. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise the issue will be procedurally barred. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015). The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Mendez-Osorio*, 297 Neb. 520, 900 N.W.2d 776 (2017). The determining factor is whether the record is sufficient to adequately review the question. *Id*.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington, supra*, the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015). In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Casares, supra*. General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal and thereby preserve the issue for later review. *Id*.

Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error. *Id*. An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *Id*. See also *State v. Filholm,* 287 Neb. 763, 848 N.W.2d 571 (2014).

Taylor alleges three ways in which his trial counsel rendered ineffective assistance. His first assignment of error with respect to his counsel's effectiveness is, "Whether [Taylor] received ineffective assistance of counsel in the discovery and preparation of his case." Brief for appellant at 7. This assignment of error fails to allege any specific deficient performance during the discovery or preparation of Taylor's case. Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). Accordingly, we will not consider this general assignment of error asserting ineffective assistance of counsel. See *State v. Archie*, 305 Neb. 835, 943 N.W.2d 252 (2020).

Taylor next alleges that his trial counsel rendered ineffective assistance by recommending that he enter a guilty plea without having viewed the video evidence against him. He further asserts that though requested, trial counsel refused his requests to view the video. Taylor argues that the video evidence does not support the written police reports and, instead, exonerates him to some degree. These videos are not part of our record on appeal, however. Though trial counsel stated during the plea hearing that the State had provided him with complete access to its file, counsel did not affirmatively state that he had reviewed the video. We note that at the plea hearing Taylor expressed no dissatisfaction with counsel and stated there were no defenses that he had not talked with his attorney about. Nonetheless, the State, though expressing skepticism, concedes that the record is insufficient to resolve this claim. We find the record is insufficient to address this claim on direct appeal.

Third, Taylor alleges that counsel rendered ineffective assistance by recommending that he dismiss his civil rights case in exchange for a plea agreement with the State. Taylor

acknowledges that support for his allegation cannot be found in the record. However, our record, which includes a transcript of the plea hearing, affirmatively shows that dismissing a civil rights case was not part of Taylor's plea agreement in this matter. The record is clear that the terms of the plea agreement between Taylor and the State were confined to Taylor's agreement to enter guilty pleas to counts one and two and the State's agreement to dismiss counts three and four. A civil rights lawsuit was not mentioned at all when the parties described their plea agreement. Moreover at sentencing, trial counsel stated that the tort claim against the city of Omaha was filed by separate counsel, but was dismissed at Taylor's request. Accordingly, we find that counsel did not perform deficiently in this respect.

*Excessive Sentence.*

Taylor argues that the sentence of imprisonment that he received is disproportionate to the nature of his crime and to the nature of his life, and he argues that he should have been sentenced to a period of probation instead. The State responds by arguing that Taylor's sentence is not excessive as it falls within the statutory sentencing range and that the court considered relevant factors in determining a sentence to suit the nature of the crime along with the facts and circumstances of Taylor's life. Additionally, the State argues that the district court committed plain error in neglecting to also order the revocation of Taylor's license for a period of 2 years. We find no error with respect to Taylor's prison sentences, and we hereby modify his sentence to correct the plain error noted by the State.

Taylor entered guilty pleas to second degree assault on an officer, emergency responder, or healthcare professional in violation of § 28-930, a Class II felony, and operating a motor vehicle to avoid arrest willful reckless driving in violation of § 28-905(1) and (3)(a)(iii), a Class IV felony. A Class II felony is punishable by a minimum of 1 year's imprisonment to a maximum of 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2018). A Class IV felony is punishable by 0 to 2 years' imprisonment, 0 to 12 months' postrelease supervision if imprisonment is imposed, a $10,000 fine, or both. *Id*. Because these two sentences imposed on Taylor fall within the statutory sentencing limits, we review them for an abuse of discretion. See *State v. Mueller*, 301 Neb. 778, 920 N.W.2d 424 (2018).

An abuse of discretion in imposing a sentence occurs when a sentencing court's reasons or rulings are clearly untenable and unfairly deprive the litigant of a substantial right and just result. *State v. Artis*, 296 Neb. 172, 893 N.W.2d 421 (2017). When imposing a sentence, a sentencing judge should customarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017). However, the sentencing court is not limited to any mathematically applied set of factors. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

In sentencing Taylor within the statutory sentencing range, the district court reviewed pertinent elements of the offense, the PSI, and the above enumerated factors. The court paid

particular attention to Taylor's failure to accept full responsibility for his actions and his demeanor during the PSI interview and plea and sentencing hearings. Even though Staskiewicz was in uniform and stated that he activated his emergency lights when he pulled Taylor over for a traffic stop, Taylor maintained that he did not know whether Staskiewicz was truly an officer, which led to him fleeing and leading law enforcement in a chase that endangered members of the public. The court also considered the nature of the offense and the amount of violence or harm it involved. By dragging Staskiewicz alongside his vehicle while fleeing arrest, Taylor injured Staskiewicz to the extent that he has required multiple corrective surgeries and experiences continued pain.

Upon our review, we find that the district court considered proper sentencing factors, sentenced Taylor within the applicable statutory sentencing ranges, and, therefore, did not impose excessive sentences with respect to his plea-based convictions for assaulting an officer and operating a motor vehicle to avoid arrest. Accordingly, we affirm those sentences.

We turn now to the plain error asserted by the State with regard to the district court's failure to order that Taylor's sentence include a 2-year license revocation. On count two, Taylor was convicted of operating a motor vehicle to avoid arrest under § 28-905(1) and (3)(a)(iii). Section 28-905(3)(b) provides:

> The court shall, as part of the judgment of conviction under subdivision (a) of this subsection, order that the operator's license of such person be revoked or impounded for a period of two years and order the person not to drive any motor vehicle for any purpose in the State of Nebraska for a like period. The revocation or impoundment shall be administered upon sentencing, upon final judgment of any appeal or review, or upon the date that any probation is revoked.

Here, the district court failed to order the revocation of Taylor's license as part of his sentence for operating a motor vehicle to avoid arrest. Such failure constitutes plain error. See *State v. Kantaras*, 294 Neb. 960, 885 N.W.2d 558 (2016). We therefore modify Taylor's sentence to correct the plain error and impose a 2-year license revocation in accordance with § 28-905(3)(b).

### CONCLUSION

Upon our review, Taylor's first contention with respect to his ineffective assistance of counsel claim was insufficiently stated, we do not consider his second contention based on the insufficiency of the record, and his third contention fails. We affirm Taylor's sentences as modified to correct plain error with respect to count two. The sentencing order shall be modified to state that Taylor shall have his driver's license revoked for 2 years.

AFFIRMED AS MODIFIED.